[No. 2385]

## PETER ESCALLE, RESPONDENT, v. FRANK MARK, ALSO KNOWN AS FRANKS MARKS, APPELLANT.

[183 Pac. 387]

1. STATUTES—CONSTRUCTION—PURPOSE—INTENT.
    In construing a statute the legislative intent controls, and in seeking the intent the evil sought to be remedied should be ascertained.

2. FRAUDULENT CONVEYANCES—BULK-SALES LAW—PURPOSE.
    The main purpose of the bulk-sales law is to protect wholesalers.

3. FRAUDULENT CONVEYANCES—BULK-SALES LAW—CONSTRUCTION—"VOID."
    Bulk-sales law, declaring certain sales "void," does not preclude the seller from recovering the purchase price of a sale made in violation of its terms; "void," as used in the statute, meaning "voidable."

APPEAL from Second Judicial District Court, Washoe County; *George A. Bartlett,* Judge.

Action by Peter Escalle against Frank Mark, also known as Frank Marks. From a judgment for plaintiff and an order denying a new trial, defendant appeals. **Affirmed.**

*Platt & Sanford,* for Appellant:

The agreement violates the bulk-sales law (Rev. Laws, 3908, 3909, 3911), is in direct violation of its provisions, and unenforceable either in law or equity.

The statute has been strictly enforced, and an agreement under it based upon the sale of a stock of goods in a partnership arrangement has been held invalid and void. Marlow v. Ringer, 91 S. E. 386; Daly v. Sumpter Drug Co., 127 Tenn. 421; Ann. Cas. 1914B, 1101.

The contract being expressly declared void by the statute, the court is without jurisdiction to enforce it. 9 Cyc. 475; 13 C. J. 492–497, 507.

*Robert Richards,* for Respondent:

The sole purpose of bulk-sales laws is the protection of creditors at the time and place of the transfer of merchandise in bulk. Such is the intent, and when that

object and intent are satisfied the statutes cannot be further extended. When the "reason of the rule ceases, the rule itself ought to cease." 1 Blackstone's Commentaries; 12 R. C. L. 525.

The phrase, "such sale or transfer shall be fraudulent and void," means "such sale or transfer shall be fraudulent and voidable as to creditors," and nothing more. "The invalidity in any case applies only to where the rights of creditors are involved, and sales in violation of the statutes are perfectly valid between the immediate parties or those claiming under them. Though the word 'void' is used in the statute, in legal effect it means 'voidable at the instance of an attaching creditor.'" 12 R. C. L. 525; MacGreenery v. Murphy, 76 N. H. 338, 82 Atl. 720, 39 L. R. A. 374; Dickinson v. Harbison, 78 N. J. Law, 97; Kelly-Buckley Co. v. Cohen, 195 Mass. 585; Squire v. Tellier, 185 Mass. 18; Brown v. Brown, 50 N. H. 552; Columbia Co. v. Braillard, 12 Wash. 22; Woodcock v. Bolster, 38 Vt. 632; Van Shaack v. Robbins, 36 Iowa, 201. "The term 'void' is equivocal. It may import absolutely null or merely voidable." Southern Co. v. Barr, 148 S. W. 845.

Bulk sales are absolutely valid and binding between the parties themselves. 12 R. C. L. 525; Newman v. Garfield, 104 Atl. 882; Oregon Co. v. Hyde, 169 Pac. 791; Benson v. Johnson, 165 Pac. 1001.

By the Court, COLEMAN, C. J.:

This action was instituted by plaintiff, who is respondent here, to recover from the defendant (appellant) the balance of the purchase price of a one-half interest in and to a hotel and saloon business conducted by the plaintiff in Reno, and a like interest in the stock, fixtures, furnishings, furniture, and appurtenances thereof. Judgment was rendered in favor of the plaintiff, and from an order denying defendant's motion for a new trial, and the judgment, an appeal has been taken.

1-3. The only point urged upon our consideration as a reason why the judgment and order appealed from

should be reversed is that prior to the making of the sale section 2 of the "Bulk-Sales Act" (Stats. 1907, p. 209; Rev. Laws, 3909) was not complied with. That section reads:

"Whenever any person shall bargain for or purchase any portion of a stock of merchandise otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, or an entire stock of merchandise in bulk, for cash or on credit, and shall pay any part of the price, or execute and deliver to the vendor thereof or to his order, or to any person for his use, any promissory note or other evidence of indebtedness, to give credit, whether or not evidenced by promissory note or other evidence of indebtedness, for said purchase price or any part thereof, without at least five days previously thereto having demanded and received from the said vendor or his agent the statement provided for in section 1 of this act, and verified as there provided, and without notifying also at least five days previously thereto, personally or by registered mail, every creditor as shown upon said verified statement when said proposed sale or transfer is to be made, and the time and conditions of payment, and without paying or seeing to it that the purchase money of said property is applied to the payment of bona-fide claims of the creditors of the vendor as shown upon said verified statement, share and share alike, such sale or transfer shall be fraudulent and void."

Section 1 of the act provides:

"It shall be the duty of every person who shall bargain for or purchase any portion of a stock of merchandise, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, or an entire stock of merchandise in bulk, for cash or on credit, before paying to the vendor or his agent or representative, or delivering to the vendor or his agent or representative, any part of the purchase price thereof or any promissory note or evidence therefor, to demand of

and receive from such vendor or agent, or if the vendor or agent be a corporation, then from the president, vice-president, secretary, or managing agent of such corporation, a written statement, sworn to substantially as hereinafter provided, of the names and addresses of all the creditors of said vendor to whom said vendor may be indebted, together with the amount of the indebtedness due or owing or to become due or owing by said vendor, to each of the said creditors, and it shall be the duty of the said vendor or agent to furnish such statement, which shall be verified."

To be more specific, it is contended that because of the failure of the defendant to demand and receive from the plaintiff, five days previous to the consummation of the sale, the sworn statement provided for in section 1 of the act in question, and give five days' notice of such proposed sale to the creditors of the vendor, the sale was and is absolutely null and void, and that for this reason the plaintiff cannot recover the unpaid amount of the purchase price.

It is true that the statute says that when there is a failure to comply with section 1 of the act the sale shall be "fraudulent and void"; but did the legislature mean that a sale should be absolutely "void" as between the parties, regardless of the fact that no creditor was prejudiced thereby? We think not. It is a cardinal rule of statutory construction that the legislative intent controls (Worthington v. District Court, 37 Nev. 212, 142 Pac. 230, L. R. A. 1916A, 696, Ann. Cas. 1916E, 1097), and in seeking the intention of the legislature in enacting a certain law we must ascertain the evils sought to be remedied. This court, speaking through Hawley, J., in Ex Parte Siebenhauer, 14 Nev. 365, said:

"The meaning of words used in a statute may be sought by examining the context and by considering the reason or spirit of the law or the causes which induced the legislature to enact it. The entire subject-matter and the policy of the law may also be invoked to.

aid in its interpretation, and it should always be construed so as to avoid absurd results"—citing Roney v. Buckland, 4 Nev. 45; State v. Dayton and Virginia T. R. Co., 10 Nev. 155; Silver v. Ladd, 7 Wall. 219, 19 L. Ed. 138; State v. Judge, 12 La. Ann. 777; State v. Mayor, 35 N. J. Law, 196.

It was said in Columbia & P. S. Co. v. Braillard, 12 Wash. 22, 40 Pac. 382:

"It is doubtless true that the word 'void,' when used in a statute, does not mean absolutely void for every purpose, and in determining its meaning in a given case regard must be had to the subject-matter of the statute, its scope, purpose and effect."

See, also, Colburn v. Wilson, 24 Idaho, 94, 132 Pac. 579; Thompson v. Esty, 69 N. H. 55, 45 Atl. 566.

It is said:

"Every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain this object it is proper to consider the occasion and necessity of its enactment, the defects or evils in the former law, and the remedy provided by the new one; and the statute should be given that construction which is best calculated to advance its object." 36 Cyc. 1110.

It was also said by this court in Ex Parte Siebenhauer, supra, 14 Nev. 369:

"In order to reach the intention of the legislature, courts are not bound to always take the words of a statute either in their literal or ordinary sense, if by so doing it would lead to any absurdity or manifest injustice, but may in such cases modify, restrict, or extend the meaning of the words, so as to meet the plain, evident policy and purview of the act, and bring it within the intention which the legislature had in view at the time it was enacted. Gibson v. Mason, 5 Nev. 285; Reiche v. Smythe, 13 Wall. 164, 20 L. Ed. 566; Burgett v. Burgett, 1 Ohio, 480, 13 Am. Dec. 634; McIntyre v. Ingraham, 35 Miss. 52; Camp v. Rogers, 44 Conn. 291; Castner v. Walrod, 83 Ill. 178, 25 Am. Rep. 369; Fisher

v. Patterson, 13 Pa. St. 338; Bishop on Statutory Crimes, sec. 212."

See, also, 36 Cyc. 1111.

In Goldfield Con. M. Co. v. State, 35 Nev. 178, 127 Pac. 77, it was said:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. United States v. Kirby, 7 Wall. 482, 19 L. Ed. 278. And see State v. McKenney, 18 Nev. 189, 2 Pac. 171; State v. Kruttschnitt, 4 Nev. 178."

In the light of these rules of construction, let us ascertain what evil the legislature sought to remedy by enacting the bulk-sales law. In 12 Ruling Case Law, sec. 54, page 525, it is stated that the bulk-sales law has but one aim, namely, "to prevent a sale of goods in bulk until the creditors of the seller have been paid in full." It is common knowledge that the main purpose of the law is to protect the wholesaler. Prior to the passage of the law, it was a common practice for retailers to sell their stock of goods in bulk, pay no one, and leave the man who sold them the goods without recourse. Such practices became so distastrous to the wholesalers that they were driven to the necessity of procuring legislation which would afford them protection against unscrupulous retail merchants. The bulk-sales law is the result.

"The object of this act was, no doubt, to protect wholesale merchants particularly against fraudulent sales by retailers; but the act by its terms protects all creditors of merchants alike." McDaniels v. Connelly Shoe Co., 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. Rep. 889; Eklund et al. v. Hopkins et al., 36 Wash. 179, 78 Pac. 787.

This being the purpose of the law, how can it be successfully urged, as contended by appellant, that we should hold that such a sale as here in question was

absolutely void? It is true that the statute says a sale shall be void when the terms of the act are not complied with; but to our minds, when construed in the light of the purpose of the statute, it was clearly the intention of the legislature that the sale should be voidable only. It is not pointed out what protection would or could be afforded any one by placing any other construction upon the law.

But all rules of construction aside, it seems to us that no other conclusion can be reached, from a reading of the entire act itself, especially section 4 thereof (Rev. Laws, 3911). This section provides that, if the vendor produces and delivers a written waiver of the requirements of the act as to notice to creditors, from at least a majority in number and amount of his creditors, the provisions of the act shall not apply. If it was the purpose of the legislature in enacting the law to protect any but creditors, the section just referred to is a most remarkable one. In fact, we cannot escape the conclusion, from a consideration of this very section, that the sole purpose of the law is to protect creditors. If such was not the intention, the legislature would never have embodied section 4 in the law, because it would manifestly have made the act inconsistent in its operation. Such seems to have been the conclusion reached by the Supreme Court of New Jersey, in considering the effect of a similar provision in the bulk-sales law of that state, in the case of Dickinson v. Harbison, 78 N. J. Law, 97, 72 Atl. 941. The court in that case said:

"The body of the act, as will be observed, declared that a sale should be void as to creditors unless certain things were done by the purchaser. The proviso, however, speaks of the sale as 'such voidable sale.' The word 'void' was used in the sense of voidable. The proviso itself shows that the sale was a nullity only when attacked by creditors within a certain period."

So in our statute the "body of the act" provides that a sale which is made without first complying with certain terms thereof shall be "fraudulent and void," while

section 4 says such requirements may be waived by creditors.

Many cases may be found growing out of the bulk-sales statutes of various states, wherein the word "void" is construed to mean "voidable"; such construction invariably being reached upon the theory that such was the evident intention of the law-making bodies. To quote from all of them would unnecessarily lengthen this opinion, and we content ourselves with the following extracts:

"The phrase 'fraudulent and void as to creditors' relates to attaching creditors who seek to set aside the vendee's title, which, until set aside, is a valid title. As between the parties to the sale, the title passed to the vendee, and it remains in him until it is vacated by a creditor of the vendor upon proceedings instituted for that purpose, or until the vendee disposes of the property. Though the word 'void' is used in the statute, in legal effect, it means voidable at the instance of an attaching creditor." McGreenery v. Murphy, 76 N. H. 338, 82 Atl. 720, 39 L. R. A. (N.S.) 374.

"The question whether in a statute the term 'void' is used with entire technical accuracy, or only in its less strict meaning as 'voidable,' is frequently one of difficulty. In many statutes the word is used in its strict technical sense, and in many it is used in the sense of voidable. In view of the subject-matter of this statute, the conditions of the law prior to its passage, the abuse which it aims to correct, and the manifest difficulty of any other view, we are of the opinion that the legislature intended to place the kind of sale named in the statute into the class of sales theretofore existing as fraudulent and for that reason voidable by creditors, unless the conditions therein prescribed were complied with; or, in other words, it is intended to create another instance of a sale which the creditors might avoid as being fraudulent and for that reason against their rights. But it was not the intention of the statute that this kind of sale should stand upon any different footing from that of the

general class to which it was added. The sale is voidable
like the other kinds of sales which are commonly called
void as against creditors, and the right of the creditor in
this sale is similar in its nature to the right of the
creditor in such other sales. Such an interpretation of
the statute seems to us reasonable, and in accordance
with the general principle of law applicable to the
subject-matter. See, in this connection, the language
used by Knowlton, C. J., in giving the opinion of the
court in Squire v. Tellier, 185 Mass. 18, 69 N. E. 312,
102 Am. St. Rep. 322." Kelly-Buckley Co. v. Cohen, 195
Mass. 585, 81 N. E. 297:

"Knowlton, C. J. * * * A sale made in violation of
the statute is void only as against creditors, and, if the
vendor's debts are paid, the sale cannot be interfered
with. A purchaser, to be safe, has only to see that the
vendor's creditors are provided for. The vendor may
sell freely, without regard to the statutes, if he pays
his debts." Squire v. Tellier, 185 Mass. 18, 69 N. E.
312, 102 Am. St. Rep. 322.

"But since the decision in State v. Richmond, 26 N. H.
232, this term 'void' is perhaps seldom, unless in a very
clear case, to be regarded as implying a complete nullity,
but is to be taken in a legal sense, subject to large quali-
fications in view of all the circumstances calling for its
application and the rights and interests to be affected in
a given case." Brown v. Brown, 50 N. H. 552.

"It is doubtless true that the word 'void,' when used
in a statute, does not always means absolutely void for
every purpose; and in determining its meaning in a
given case regard must be had to the subject-matter of
the statute, its scope, purpose, and effect." Columbia
Co. v. Braillard, 12 Wash. 22, 40 Pac. 382.

"The question involves the construction of a clause of
our revenue law: * * * 'Provided further, that in
all cases where the owner of land sold for taxes shall
resist the validity of such tax title, such owner may
show and prove fraud committed by the officer selling
the same, or the purchaser to defeat the same; and if

fraud is so established such sale and title shall be void.' This controversy involves the construction of the * * * clause just quoted. * * * The word 'void' has, with lexicographers, a well-defined meaning: 'Of no legal force or effect whatsoever; null and incapable of ratification.' Webster's Dict. But it is sometimes, and not infrequently, used in enactments by the legislature, in opinions by courts, in contracts by parties and in arguments by counsel, in the sense of 'voidable'; that is, capable of being avoided or confirmed. Idem. The word 'void,' when used in any of these instruments, will therefore be construed in one sense or the other, as shall best effectuate the intent in its use, which will be determined from the whole of the language of the instrument and the manifest purpose it was framed to accomplish. Or, as the same rule has been more extendedly stated: 'It is the duty of the court to ascertain the meaning of the legislature from the words used in the statute and the subject-matter to which it relates, and to restrain its operation within narrower limits than its words import, if the courts are satisfied that the literal meaning of its words would extend to cases which the legislature never designed to include in it.' Leeses, etc. v. Blougher, 14 Pet. 178, 10 L. Ed. 408. This rule is broader than the one first stated, for it would justify restraining the meaning of a word to narrower limits than its import; whereas, to restrain the word 'void' to the meaning of 'voidable' is to give it one of its not unfrequent accepted significations." Van Shaack v. Robbins, 36 Iowa, 201.

See, also, Southern Co. v. Barr (Tex. Civ. App.) 148 S. W. 845; 12 R. C. L. 525; Newman v. Garfield (Vt.) 104 Atl. 882; Oregon Co. v. Hyde, 87 Or. 163, 169 Pac. 791; Benson v. Johnson, 85 Or. 677, 165 Pac. 1001, 167 Pac. 1014.

For the reasons given, it follows that the order and judgment appealed from must be affirmed.

It is so ordered.