[No. 2577]

# H. WARREN, RESPONDENT, v. L. G. WILSON, APPELLANT.

[210 Pac. 204, 997 ; 212 Pac. 497]

1. ELECTIONS—WHETHER DEFENDANT IN A PRIMARY ELECTION CONTEST WAS A QUALIFIED VOTER HELD NOT IN ISSUE SO AS TO REQUIRE A FINDING IN RELATION THERETO.

Where a complaint in a primary election contest did not charge that defendant was not a qualified elector, and the answer alleged that he was a qualified elector and was not denied by the reply, the question was not an issue so to require a finding in relation thereto.

2. APPEAL AND ERROR—THAT APPELLANT'S OPENING BRIEF WAS SERVED ON RESPONDENT TWO HOURS AFTER THE TIME ALLOWED NOT GROUND FOR DISMISSING APPEAL.

That the opening brief of appellant was not served on respondent until two hours after the time fixed by the court is not jurisdictional and not ground for dismissing the appeal, where respondent was in no way injured, in view of Rev. Laws, 5358, providing that appeals should not be dismissed except for substantial errors in proceeding.

3. STATUTES—DEFECTS OF FORMER LAW AND REMEDY PROVIDED BY NEW LAW MUST BE ASCERTAINED IN ARRIVING AT LEGISLATIVE INTENT.

In arriving at the intention of the legislature in enacting certain statutes, the court must ascertain the defects or evils of the former law and the remedy provided by the new law.

4. ELECTIONS—PENCIL-MARKED BALLOTS SHOULD BE REJECTED.

Under Stats. 1917, c. 155, sec. 29, providing that the general election law shall apply to primary elections except where otherwise provided, and in view of sections 16–18 and Stats. 1901, c. 100, requiring the voter to indicate his choice by stamping a cross or an X with the rubber stamp after the candidates' names, ballots on which the voter has indicated his choice by making a cross with a lead pencil should be rejected.

5. APPEAL AND ERROR—EVIDENCE NOT EMBODIED IN BILL OF EXCEPTIONS CANNOT BE SUPPLIED BY ORDER FOR DIMINUTION OF RECORD.

The rule relative to the making of an order for a diminution of the record contemplates a bringing up of a part of the record as made in the lower court, which through oversight has not been brought up, and does not contemplate the bringing up of evidence not embodied in a bill of exceptions.

## ON PETITION FOR REHEARING

1. APPEAL AND ERROR — SUPREME COURT ON REHEARING MAY REFUSE TO CONSIDER QUESTIONS NOT URGED OR DECIDED ON ORIGINAL HEARING.

Petition for rehearing may not be based on questions not urged or decided on original hearing.

2. APPEAL AND ERROR—OBJECTION TO BILL OF EXCEPTIONS AND
ASSIGNMENT OF ERRORS NOT CONSIDERED AS GROUNDS FOR
REHEARING.

Objections to bill of exceptions and assignment of errors,
not urged on original hearing, may not be considered as reason
for rehearing.

3. APPEAL AND ERROR—SUPREME COURT'S JUDGMENT NEED NOT BE
IN WRITING.

Under Rev. Laws. 4839, requiring all opinions and decisions
rendered by the supreme court to be in writing, signed by the
justices concurring therein, and to be spread at large on the
records of the court kept for that purpose, the supreme court
was not required to render a written judgment.

4. APPEAL AND ERROR—COURT ON REHEARING WILL NOT CONSIDER
QUESTION OF JURISDICTION TO RENDER JUDGMENT ON ORIGINAL
HEARING.

The supreme court on petition for rehearing will not con-
sider question of whether it had jurisdiction on original hear-
ing to render a final judgment, since a rehearing is granted
for the purpose of correcting errors made in passing on ques-
tions decided, and not for the purpose of correcting an order
inadvertently or inaptly made.

ON MOTION TO MODIFY JUDGMENT

1. APPEAL AND ERROR—GROUNDS STATED IN MOTION TO MODIFY
JUDGMENT, BUT NOT ARGUED, DEEMED WAIVED.

Grounds stated in a motion to modify a judgment, but
not argued, will be deemed waived.

2. APPEAL AND ERROR—SUPREME COURT MAY ENTER FINAL JUDG-
MENT OR REMAND, WITH DIRECTIONS TO ENTER JUDGMENT
WHERE FACTS ARE UNDISPUTED.

Where the facts are undisputed, and the only errors are
errors of law, the supreme court, on reversal, will ordinarily
render final judgment, or remand the case, with directions to
enter a judgment for the appellant, as authorized by Rev.
Laws, 5359).

APPEAL from Sixth Judicial District Court, Humboldt
County; *E. J. L. Taber,* Judge.

Action by H. Warren against L. G. Wilson. From a
judgment for plaintiff and an order denying a motion
for a new trial, defendant appeals. **Reversed. Peti-
tion for rehearing denied.   Motion to modify judgment
denied.**

*Campbell & Robins* and *J. A. Langwith,* for Appellant:

The lower court erred in counting ballots marked with
a lead pencil or some instrument used as a brush.   Since

1899, when the supreme court suggested a policy to the legislature which would remove many objections to the validity of ballots (25 Nev. 192, 58 Pac. 284), the legislature has consistently enacted laws to secure the utmost secrecy of the ballot, and the courts have uniformly enforced such policy.

If an unauthorized mark is inadvertently placed on a ballot by the voter, and is not of a character to be readily used for a corrupt purpose, the ballot should be counted, but if it is made deliberately, and may be used as a means of identification, the ballot should be rejected. Sweeney v. Hjul, 23 Nev. 409, 48 Pac. 1036; James v. Stern, 44 Nev. 430.

The law requiring stamping is mandatory. To count ballots otherwise marked would nullify the law. James v. Stern, supra.

For examples of void ballots, see State v. Baker, 35 Nev. 314; Strosnider v. Turner, 29 Nev. 347.

No ballot shall be rejected for any "technical" error which does not render it impossible to determine the voter's choice (Stats. 1921, p. 395) ; using a pencil or an instrument as a brush is not a "technical" error, but is a very substantial one, to permit which would repeal the statute by construction.

*Warren & Hawkins*, for Respondent:

Stats. 1917, amending the election laws, which left out the very important word "only," clearly shows the intent of legislature to change mandatory requirement of the use of a stamp to directory only.

A ballot shall not be rejected when the intention of the voter is clear, and where marks on the ballot cannot be definitely shown to be intentional distinguishing marks. Stats. 1913, p. 556, sec. 26.

"Notwithstanding the use of the words 'stamping,' 'stamp,' and 'stamped,' the provision that 'no ballot shall be rejected for any technical error which does not render it impossible to determine the voter's choice' is sufficient to permit the counting of a ballot marked with

a penciled cross." Castagnetto v. Superior Court, 209 Cal. 549.

Statutes should be liberally construed as to provisions relating to the marking of ballots, so as not to disfranchise voters. Buckner v. Lynip, 22 Nev. 426, 41 Pac. 762; Turner v. Wilson, 154 Pac. 2; McClelland v. Erwin, 86 Pac. 283.

By the Court, COLEMAN, J.:

This is an appeal from a judgment rendered in favor of respondent, and from an order denying appellant's motion for a new trial. Both of the parties were candidates in the recent primary election for the Democratic nomination for district attorney of Humboldt County. A certificate of nomination was issued to appellant by the board of canvassers of the county.

A motion to dismiss the appeal was made by respondent, upon the grounds: (1) That there is no finding by the lower court that appellant is a qualified elector of Humboldt County; (2) that no opening brief was served upon respondent within the time fixed by order of the court; and (3) that no bill of exceptions was taken to the orders and rulings complained of by appellant.

1. As to the first contention, we may say there is no allegation in the complaint charging the appellant is not a qualified elector. On the other hand, in his answer there is an allegation that he is such qualified elector, which is not denied by the reply. The question of his qualification is not therefore an issue in the matter.

2. The fact that the opening brief of appellant was not served upon respondent until two hours after the time fixed by the court is not jurisdictional, and it is not contended that the respondent was in any way injured. Rev. Laws, 5358. There is in the record a bill of exceptions, duly settled by the trial judge. The motion to dismiss must be denied.

The trial court found that there were only two candidates in the primary election for the Democratic nomination for district attorney—the appellant and the

respondent. The court further found that there were 720 legal votes cast for the nomination of a candidate for district attorney, of which it found that Warren received 361 votes and Wilson 359 votes, thereby giving the former a majority of 2.

The result of the appeal depends on but one question, namely: Did the lower court err in counting certain ballots cast for respondent, wherein the voter indicated his choice by making a cross opposite respondent's name with a lead pencil? The lower court admitted these ballots in evidence and counted them for respondent. If they had been rejected, it would have followed that appellant would have been declared the Democratic nominee for district attorney by the trial court.

3. It is contended by appellant that the pencil-marked ballots should be rejected. We think this contention must be sustained. It is a well-recognized rule in this state that in arriving at the intention of the legislature in enacting certain statutes we must ascertain the defects or evils of the former law and the remedy provided by the new law. Escalle v. Mark, 43 Nev. 172, 183 Pac. 387, 5 Am. Law Rep. 1512. With this rule in mind, let us look to the history of our legislation on the requirements as to the marking of ballots. In the year 1898 the law provided that ballots voted in the general election should be marked with a black lead pencil. Growing out of the general election of that year was a contest for the office of governor, which was decided by this court, and reported under the title of State v. Sadler, 25 Nev. 131, 58 Pac. 284, 59 Pac. 546, 63 Pac. 128, 83 Am. St. Rep. 573. One of the questions determined in that case was as to whether or not ballots marked with a blue pencil should be counted. The court, after observing that the chief purpose of the Australian ballot system then in use was to prevent fraud and corruption at the elections, made several allusions to the necessity of the "uniformity" of paper for the printing of ballots, of the printing of the same, and of the marking of ballots by the voters, finally saying:

"We believe it proper to suggest that certain amendments to the law as it exists will obviate many, if not all, of the objections made to the validity of the ballots.  It is impossible, under the present system of marking with a pencil, to obtain uniformity in form of markings.  This difficulty can be overcome by requiring, as in other states, that the markings shall be made with a rubber stamp."

4.  This decision was rendered at the July term, 1899, of this court, and at the ensuing session the legislature so amended our statute as to require voters to indicate their choice of candidates for office "by stamping a cross or X * * * after the name of the person for whom he intends to vote. * * * * " Stats. 1901, p. 112.  The action of the legislature, following so closely upon the recommendation of this court, can be entitled to but one interpretation, and that is that it sought to require a uniform system of marking ballots by electors, and that such uniform markings should be by stamping, as indicated.  This conclusion is, to our minds, too obvious to call for prolonged consideration at our hands.

A few years after this amendment, this court was called upon to pass upon an election contest in Strosnider v. Turner, 30 Nev. 155, 93 Pac. 502, 133 Am. St. Rep. 712, wherein the court, carrying out the theory of uniformity in the marking of ballots, held that a cross stamped upon the ballot after the name of the candidate, but outside of the square intended for it, should not be counted; and in the more recent case of State v. Baker, 35 Nev. 300, at page 317, 129 Pac. 452, at page 457, this court refused to count pencil-marked ballots, simply saying: "Ballots having the following defects are also rejected: Crosses made with a lead pencil or pen. * * * "

In rejecting these ballots without further comment, the court evidently concluded that the purpose of the legislature to require that all voters should indicate their choice by stamping the ballot was so clear that

there was no room for interpretation or construction. And this was a reasonable view for the court to have taken. For us now to hold otherwise would be to nullify the clear import of the statute. If one voter may indicate his choice with a black lead pencil, another may do so with a blue one, another with a red one, and others with pencils of as many colors as are manufactured. Indeed, if such could be the case, why might not a voter indicate his choice in any method peculiar to his liking. In such circumstances, what would become of the uniform system of marking sought to be required by the legislature? Would not the clear legislative enactment be entirely nullified? Respondent contends that the primary election law does not require that a voter's choice shall be indicated by stamping a cross. We think this contention cannot be sustained. Section 29 of the primary election law (Stats. 1917, p. 276) provides that the provisions of the general election law, except where otherwise specified, shall apply; furthermore, the primary act, in sections 16, 17, and 18, clearly indicates that the method by which the voter shall indicate his choice shall be by stamping his ballot.

Our attention is directed to a recent opinion of the Supreme Court of California in the case of Castagnetto v. Superior Court, S. F. No. 10,413, 209 Pac. 549, wherein that court held that pencil-marked ballots should be counted. We decline to be controlled by that decision, for the reasons we have given.

But respondent contends that the entire spirit of the primary and general election laws, as expressed in different sections of the statutes to which our attention is directed, is that the intention of the voter must control when that intention can be ascertained. In a general way, this is undoubtedly true; but, as all statutes on this subject are in pari materia, and must be read together, we must harmonize those provisions of the law with the provisions requiring the uniform stamping of the ballots by the voters, at the same time upholding the provisions requiring the voter to indicate his

choice by stamping a cross opposite the name of the party for whom he wishes to vote.

5. We are now brought to a consideration of the evidence, and may with propriety say that prior to the argument upon the merits a motion was made by respondent for an order for a diminution of the record in the case so as to bring to our attention certain ballots claimed to have been introduced in evidence upon the trial, but which are not referred to in the bill of exceptions settled by the trial court and certified up pursuant to said bill of exceptions. The court declined to make an order, and declines to consider those ballots, for the reason that the rule relative to the making of an order for a diminution of the record contemplates a bringing up of a part of the record as made in the lower court, which through oversight has not been brought up. It does not contemplate the bringing up of evidence not embodied in a bill of exceptions. While it is to be regretted that a portion of the evidence is not before us, that is a matter over which we have no control. From a colloquy between counsel, we infer that counsel for appellant sought to have certain ballots embraced in the bill of exceptions, but that respondent, contemplating taking an appeal, desired to have such ballots embraced in a bill of exceptions, which he desired to have settled independent of the one before us, and therefore the court did not insist that all of the ballots which were in dispute should be made a part of the bill of exceptions before us, if there be such ballots.

But we are confined in the consideration of the case to the ballots mentioned in the bill of exceptions (Corcoran v. Dodge, 45 Nev. 406, 204 Pac. 879, and cases there cited), wherein the court certifies that the bill of exceptions is allowed and approved and contains the substance of all of the material evidence relating to the point or points involved, and that the same is correct. Among the ballots which are made a part of the bill of exceptions are three counted for the respondent, wherein the voter indicated his choice for respondent by

marking a cross with a lead pencil opposite the name of the respondent. From what we have said, the pencil-marked ballots should not have been counted by the lower court for the respondent, but should have been rejected. By rejecting these ballots, so counted for the respondent, his vote, instead of being 361, is 358, thereby giving appellant a majority of 1.

It appears from the bill of exceptions that the trial court admitted in evidence, and counted for the respondent, certain ballots containing numbers printed on the back thereof. Appellant objected to the admission into evidence of these ballots, for the reason that they bore identifying numbers. The numbers thus appearing upon the respective ballots were legally printed thereon, but the election officers in tearing off the ballots from the stubs did not tear along the perforated line, leaving portions of the stubs containing the numbers mentioned. Section 46 of the general election law (Stats. 1917, c. 197), which, as we have said, is incorporated into and made a part of the primary law, provides that—

"No ballots shall be deposited in the ballot-box unless the water-mark, * * * appears thereon, and the slip containing the number of the ballot has been removed therefrom by the inspector."

Counsel for appellant also contend that certain other ballots, which were counted by the trial court for respondent, should have been rejected as bearing identifying marks. We do not deem it necessary to pass upon these contentions, since appellant has a clear majority, even if the said ballots are properly counted for respondent.

For the reasons given, the judgment and order appealed from are reversed.

DUCKER, J.: I concur.

HART, D. J.: I concur.

NOTE—SANDERS, C. J., being disabled from sitting in this case, HART, District Judge, was designated by the Governor to sit in his stead.

ON PETITION FOR REHEARING .

By the Court, COLEMAN, J.:

Respondent has filed a petition for rehearing, in which he urges five reasons why the court should grant the petition. They are: (1) That no bill of exceptions was ever filed upon the appeal; (2) that there is no assignment of errors; (3) that "there is not a scintilla of evidence properly before the court upon which to base any opinion upon the merits of this case"; (4) that the court was absolutely without authority to render an oral opinion in the case, and (5) that the court was without jurisdiction to render a final judgment.

1. None of the grounds assigned as reasons why a rehearing should be granted goes to anything urged upon the original hearing or decided by the court. It is not claimed that the court erred on any point decided in the former opinion. This of itself is sufficient reason for denying the petition, as has been repeatedly decided. Nelson v. Smith, 42 Nev. 302, 319, 176 Pac. 261, 178 Pac. 625.

2. But we are amazed at the contention of counsel to the effect that there is neither a bill of exceptions nor an assignment of errors in the record. Both are in the record, and were referred to upon the former hearing. It may be that the bill of exceptions is somewhat informal, and that certain defects exist as to the assignment of errors, but we are not prepared to say that this is true. At any rate, no objection was made to the assignment of errors on the original hearing, nor was it contended that the certificate of the trial judge to the purported bill of exceptions was defective or did not comply with the statutory requirements, nor could there well have been. Certain contentions were made as to the bill of exceptions, preliminary to the hearing on the merits, but no such contention as is now urged was made.

The respondent, a member of the bar of this state, of twenty-six years' standing, was in court and was heard both as to the preliminary matters and on the merits,

and he was also represented by counsel, who was well informed as to the facts and the law of the case, and who argued it with marked ability, which was commented upon by the members of the court when they retired for conference. As an evidence of the preparation given to the case, a certified copy of an opinion of the highest court of a sister state, which had not yet been published, was furnished for our consideration.

Respondent's rights were, we think, safeguarded upon the former hearing in every way possible. If he suffered in this court, it was because of mismanagement in the preparation of the bill of exceptions in the lower court on the part of respondent. Such might have been the fact, judging from a colloquy between counsel.

3. In support of the fourth reason assigned as a ground for a rehearing, our attention is directed to section 4839, Revised Laws of 1912, which reads:

"All opinions and decisions rendered by the supreme court shall be in writing, signed by the justices concurring therein, and shall be spread at large on the records of the court kept for that purpose."

This section has been construed upon several occasions, and it has been uniformly held that it did not preclude the rendering of an oral judgment, but was meant to require a written opinion in every case, even though an oral judgment be rendered in a case. One of the conspicuous cases in which such an interpretation was put upon the provision in question was that of In Re Winters, 40 Nev. 335, 163 Pac. 244, as is shown by the concluding paragraph of the opinion, wherein one of the present counsel for the respondent, as chief justice, announced the order of the court, and signed the written opinion thereafter.

4. The last point urged is that the court had no jurisdiction to render a final judgment. Without undertaking to dispose of this contention, we may say that if it be conceded that the contention is correct, there would be no reason for granting a rehearing. A rehearing is granted for the purpose of correcting errors made

in passing upon questions decided, and not for the purpose of correcting an order inadvertently or inaptly made. A court may properly decide the law of the case, and yet make an order not in consonance with sound discretion. In such circumstances it would not be proper to grant a rehearing, which opens up the case for a reargument of the points originally presented and determined.

The petition is denied.

SANDERS, C. J., not participating.

## ON MOTION TO MODIFY JUDGMENT

By the Court, COLEMAN, J.:

This case is now before us upon an application for a modification of the judgment heretofore rendered by this court. The case was argued on its merits, and was submitted for consideration and determination about 4 o'clock on the afternoon of October 23, 1922. The general election was held on November 7, 1922, at which time a district attorney was to have been elected for Humboldt County. As appears from the original opinion in this case, the parties hereto were opposing candidates in the primary election, held in September, 1922, for the Democratic nomination for district attorney. In due time after the primary election the board of canvassers issued a certificate of nomination to Wilson. In the contest proceedings the court rendered judgment for Warren. Wilson was at the time the incumbent.

There were no candidates on any other ticket for the nomination, and whichever of the parties hereto should receive the Democratic nomination and succeed in having his name appear upon the ballot as a candidate for the office was sure of election in case he received one vote. Under the law of the state, which authorizes qualified registered voters, who are absent from the state, to cast a ballot, it was provided that they might apply to the county clerk for a ballot not more than fifteen days before the election. To enable

that officer to mail the ballot demanded on the fifteenth day before the election, it was necessary that the printed ballot be in his possession not later than the 23d day of October, 1922. As it was, the ballot could not have been printed before the night of the 23d.

This statement shows the importance of an immediate decision of this case upon its merits. At the conclusion of the oral argument and the submission of the case, the court announced that it would immediately enter upon a consideration of the case and render judgment orally, and thereafter file a written opinion, which seemed satisfactory to the parties, who, with their attorneys, were in court, and no objection was made to that plan. The counsel who are now active in this matter in behalf of respondent were not then in the case, and were not present. At 9 o'clock p. m. of the day mentioned, judgment was rendered orally in favor of the appellant, and a written opinion was filed thereafter. By the judgment it was ordered that the judgment of the trial court be reversed, and that judgment be entered in favor of the appellant, by the trial court.

1. While several grounds are stated in the motion, but one is argued; hence we deem the others waived. In Re Hegarty's Estate, 45 Nev. 145, 199 Pac. 81.

2. It is said that the court had no authority or jurisdiction to direct what kind of a judgment should have been entered in the trial court, and it is therefore said that the judgment entered by this court is in excess of its jurisdiction, and should be modified. In support of the contention urged, counsel cites numerous authorities, and quote, among others, 2 R. C. L. pp. 281–283, but they fail to quote as follows from page 281, R. C. L.:

"Where the facts of the case are undisputed and the only errors therein are errors of law, the court on reversal ordinarily will render final judgment or will remand the case to the lower court with directions to enter judgment in accordance with the opinion or with specific directions."

This, so far as we can learn, is the general rule. 2 Hayne, New Trial and Appeal (Ed. 1912) p. 1700.

The facts in the instant case are not in question. The entire evidence consists of ballots cast at the primary election, which are before us; hence there can be no dispute as to the evidence. The only question for the consideration of the trial court was whether ballots having certain marks should be counted for the appellant or the respondent. Nothing but questions of law, concerning which the ruling of this court is conclusive, were before the trial court. The same rule applies to the situation in hand as would apply when the only question involved is the construction of a will or some other writing, which is that this court may draw its own conclusions as to the legal effect of such document. Cassinelli v. Humphrey Supply Co., 43 Nev. 208, 183 Pac. 523.

By Rev. Laws, 5359, it is provided:

"Upon an appeal from a judgment or order, the appellate court may reverse, affirm, or modify the judgment or order appealed from * * *; and may, if necessary or proper, order a new trial, or that further action or proceedings be had in the lower court without a new trial, and may remand the case for such further action or proceedings only. * * * *"

Counsel evidently overlooked this section of our statute. It seems to give this court ample authority to make the order which it did make. This court directed the judgment to be entered by the trial court in the following cases, among others: Shearer v. City of Reno, 36 Nev. 443, 136 Pac. 705; Earl v. Morrison, 39 Nev. 120, 154 Pac. 75; Nye County v. Schmidt, 39 Nev. 456, 157 Pac. 1073, McCarran, J., writing the opinion.

We have not undertaken to follow counsel and to answer the long brief filed, for the reason that it totally ignores the statutory provision which we have quoted, which necessarily results in a denial of the motion, since counsel waived the other grounds of the motion by not discussing them.

The motion is denied.

SANDERS, C. J., not participating.