THE STATE OF NEVADA, Appellant, *v.* JOSEPH GARVIN WEBSTER, Respondent.

No. 16941

October 8, 1986 726 P.2d 831

Young and Springer, JJ., dissented.

*Brian McKay,* Attorney General, Carson City; *Brent Kolvet,* District Attorney, and *Harold Kuehn,* Deputy District Attorney, Douglas County, for Appellant.

*John W. Aebi,* Carson City, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

This is an appeal from an order whereby the district court determined that a laboratory assistant was not a person legally authorized to withdraw a blood sample for analysis of blood alcohol content. We disagree with the district court's determination, and therefore, reverse and remand for further proceedings consistent with this opinion.

### The Facts

On June 8, 1985, a car driven by Joseph Webster collided with a motorcycle. The two people riding on the motorcycle sustained severe injuries. The responding Nevada Highway Patrol officer noticed an odor of alcohol emanating from Webster. Pursuant to the officer's request, Webster agreed to submit to a legal blood alcohol analysis. A laboratory assistant from Carson-Tahoe Hospital withdrew the blood sample and analysis revealed a blood alcohol content of 0.101 percent.

On October 2, 1985, Webster was charged with two felony counts of driving under the influence of intoxicating liquor with resulting substantial bodily harm, and two felony counts of reckless driving causing substantial bodily harm. Shortly thereafter, Webster filed a motion to suppress all evidence relating to the

blood test (including the results), contending the blood sample had been drawn by a person not authorized to do so pursuant to statute. The motion was opposed by the State, and on December 19, 1985, the district court granted the motion to suppress. The court determined that a laboratory assistant was not one authorized by statute to withdraw such a sample. We have determined that the district court erred.

## Issue Presented

NRS 484.393 provides in pertinent part:

1. The results of any blood test administered under the provisions of NRS 484.383 or 484.391 are not admissible in any hearing or criminal action arising out of the acts alleged to have been committed while a person was under the influence of intoxicating liquor or a controlled substance unless:

(a) The blood tested was withdrawn by a physician, registered nurse, licensed practical nurse, advanced emergency medical technician-ambulance or a technician employed in a medical laboratory.

The State argues that a laboratory assistant falls within the language "technician employed in a medical laboratory." The district court relied on two sections of the Nevada Administrative Code (NAC) presented by Webster which defines "medical technician" and "laboratory assistant."[1] A review of these provisions

---

[1]NAC 652.440 provides:

Medical technician: Duties; qualifications.

1. A medical technician shall:

(a) Serve to assist supervisory personnel in the preliminary preparation of specimens and similar items;

(b) Perform only those laboratory manipulations which require limited technical skill and responsibility as assistant to supervisory personnel; and

(c) Perform tests only under the supervision of higher level personnel.

2. A medical technician must be a high school graduate who, subsequent to graduation, has:

(a) Completed at least 1 year in a formal training program for technicians approved by the board;

(b) Successfully completed an official 52-week training program in an armed services school of medical technology and has, at the journeyman's level, held the occupational specialty in the military as an enlisted person of medical laboratory specialist or laboratory technician; or

(c) Served 2 years as a technician trainee, rotated through the various disciplines, in a clinical laboratory with a director at the doctorate level who is licensed by this state.

NAC 652.450 provides:

Laboratory assistant, laboratory trainee: Duties, qualifications.

1. A laboratory assistant shall provide manual aid only, following

reveals that the entities have different levels of training and responsibility.

This court is charged with the responsibility of determining whether the district court erred in determining that the statute should be construed to exclude laboratory assistants as defined by the Board of Health in NAC 652.450. We are thus required to consider the intent of the legislature in construing the language of NRS 484.393(1)(a).

## Discussion

We first note that the statute was enacted in 1969 and contained the language "technician employed in a medical laboratory." *See* 1969 Nev. Stats. ch. 341 § 7. The rules and regulations governing medical laboratories were approved by the Board of Health on May 15, 1974, and became effective as of August 5, 1974. Our research has failed to reveal that these job descriptions existed prior to 1974. This being the case, the legislature could not have intended "technician" to encompass "medical technician" as defined in NAC 652.440. It would be impossible for the legislature in 1969 to consider code provisions which did not exist until 1974.

Regardless of the above, further analysis leads us to conclude that the legislature did not intend for "technician" to be so narrowly construed. The meaning of certain words in a statute may be determined after examination of the context in which they are used and by considering the spirit of the law. Welfare Div. v. Washoe Co. Welfare Dep't, 88 Nev. 635, 637-38, 503 P.2d 457, 459 (1972). Additionally, statutory construction should always avoid an absurd result. *Id. see also* Escalle v. Mark, 43 Nev. 172, 175-76, 183 P. 387, 388 (1919).

We note that "technician" is generally used in a generic sense. A technician is "[o]ne versed or skilled in the technical details of a subject or art." Webster's New International Dictionary 2590 (2nd ed. 1959). In the absence of any reason to the contrary, a word which is ambiguous should receive that meaning which is generally ascribed to it within the community. Comstock M. &

specific instructions, in areas requiring limited technical skills, as assigned by higher level personnel, and only under their direct supervision. He may not independently perform laboratory procedures, but may assist manually under direct supervision.

2. A laboratory assistant must be a high school graduate who, subsequent to graduation, has demonstrated a distinct ability in laboratory procedures, such as assisting at an autopsy, in the preparation of specimens or other such procedures, during 6 months of training under a laboratory director who is licensed in this state.

M. Co. v. Allen, 21 Nev. 325, 331, 31 P. 436 (1892). It is obvious to us that creation of a more narrow definition of this term would be contrary to the rule of statutory construction which requires that ordinary meanings be ascribed to ambiguous words or phrases.

Next, our review of the spirit of the law reveals that the obvious purpose of NRS 484.393(1)(a) is to assure that a medically trained and competent individual will withdraw the blood sample in an acceptable manner. An examination of the amendments to NRS 484.393 reveals that the legislature has broadened the categories of persons qualified to withdraw legal blood samples. Licensed practical nurses and paramedics have been so included. The legislature has been cognizant of various problems which arise as a result of the statute being too restrictive. Specifically, the legislature has been concerned with the actual manpower available and a desire for cost-effectiveness. Assembly Committee on Transportation, May 6, 1981 and March 5, 1969. We are particularly concerned with the burdens which would be imposed on small, rural health care facilities if "technician" is construed as Webster urges. In Smith v. Southern Pacific Co., 50 Nev. 377, 382, 262 P. 935, 936 (1928), this court directed that statutory construction should produce an effect which is not likely to "produce mischief." Construing the term "technician" in its general meaning will avoid "mischief." This will be accomplished without sacrificing the standards which are necessary in order to assure the public that a qualified individual withdraws the necessary blood sample.

Lastly, we disagree with Webster's contention that this is a penal statute and, thus, must be construed in order that any doubt as to its meaning be resolved in his favor. A penal law is one which imposes a penalty for an offense of a public nature. Tulsa Ready-Mix Con. Co. v. McMichael Concrete Co., 495 P.2d 1279, 1281-82 (Okla. 1972); Black's Law Dictionary 1290 (4th ed. 1951). NRS 484.393 fails to define an offense or prescribe a penalty. We also decline to determine that every section of an act must be strictly construed merely because sections of the act provide for criminal penalties. *Cf.* Mourning v. Family Publications Service, Inc., 93 S.Ct. 1652, 1663 (1973).

The purpose of the rule requiring strict construction of a penal statute is to ensure that individuals have notice of conduct which is deemed criminal by the state. *Id.* United States v. Otherson, 637 F.2d 1276, 1285 (9th Cir. 1976); Adler v. Sheriff, 92 Nev. 436, 441, 552 P.2d 334, 337 (1976). Conduct must be "plainly and unmistakenly within the statute" before punishment may be

imposed. *Adler* at 441. A statute cannot encompass conduct which is not clearly described. We also desire that the legislature, rather than the courts, define criminal behavior and prescribe the penalties. Here, there are no such concerns. NRS 484.393 is designed to protect a defendant from bodily intrusion by unqualified personnel. We are not confronted with the potential for arbitrary law enforcement and, thus, are unable to determine that strict construction of this statute is required.

We also note that even if the statute was deemed one of a penal nature, a different result would not follow. "[T]he rule of lenity has little independent force; it cannot substitute for common sense, legislative history, and the policy underlying a statute." *Otherson* at 1285. Here, these factors have been evaluated. "Technician" must be given its ordinary meaning. To do otherwise would ignore obvious legislative intent and distort the meaning of the term beyond that of common sense. *See also* State v. Nevada Northern Railway Co., 48 Nev. 436, 440, 233 P. 531, 532 (1925). We also note that the rule of lenity does not require the narrowest possible interpretation. Words or phrases in criminal statutes have been interpreted broadly. *Otherson* at 1285. A penal statute should not be so narrowly construed as to interfere with the state's ability to administer its criminal laws in an efficient manner. United States v. Mussry, 726 F.2d 1448, 1455 (9th Cir. 1984).

Therefore, for the above reasons, we reverse the decision of the district court which suppressed all evidence related to the blood alcohol analysis. In view of the plain meaning and the purpose of the statute, the term "technician in a medical laboratory" is to be construed liberally. There is ample evidence to indicate that a laboratory assistant is one authorized pursuant to NRS 484.393 to withdraw blood samples for analysis of alcohol content. We remand this case to the district court in order that the qualifications of the technician in question be examined. If the district court judge is satisfied that she was competent to withdraw such a blood sample, then the case shall proceed on its merits.

MOWBRAY, C. J., and STEFFEN, J., concur.

YOUNG, J., with whom SPRINGER, J., concurs, dissenting:

Although I have no quarrel with the authority cited by the majority, I disagree with the reasoning. Accordingly, I must respectfully dissent.

I see no reason not to adopt NAC 652.440 for use as a

guideline in interpreting NRS 484.393(1)(a).[1] A laboratory assistant simply does not rise to the level of a technician. Even were I to agree with the majority that the purpose behind NRS 484.393(1)(a) is to insure that only competent, medically trained individuals withdraw blood samples, that purpose is not furthered by the majority's interpretation.[2] Rather, the use of NAC 652.440 in interpreting NRS 484.393(1)(a) would insure that only those persons possessing certain qualifications necessary to receive a state license could withdraw blood samples. Under the majority view, anyone "versed or skilled in the technical details of a subject or art" employed by a medical laboratory could withdraw a blood sample. Thus, an X-ray or computer technician employed at a medical laboratory would fall within the majority's interpretation of those persons qualified to withdraw blood samples pursuant to NRS 484.393(1)(a). Therefore, it is obvious that the majority opinion will not insure that only competent persons withdraw blood samples.

The majority opinion reasons that because NAC 652.440 was not enacted until some five years after NRS 484.393(1)(a), the legislature could not have intended NAC 652.440 to act as a guideline. However, I note that NRS 484.393(1)(a) was amended both in 1981 and 1983—after NAC 652.440 was promulgated. Yet, no attempt was made by the legislature to distinguish "technician employed by a medical laboratory," NRS 484.393(1)(a),

---

[1]NAC 652.440 provides:

652.440 Medical technician: Duties; qualifications.

1. A medical technician shall:

(a) Serve to assist supervisory personnel in the preliminary preparation of specimens and similar items;

(b) Perform only those laboratory manipulations which require limited technical skill and responsibility as assistant to supervisory personnel; and

(c) Perform tests only under the supervision of higher level personnel.

2. A medical technician must be a high school graduate who, subsequent to graduation, has:

(a) Completed at least 1 year in a formal training program for technicians approved by the board;

(b) Successfully completed an official 52-week training program in an armed services school of medical technology and has, at the journeyman's level, held the occupational specialty in the military as an enlisted person of medical laboratory specialist or laboratory technician; or

(c) Served 2 years as a technician trainee, rotated through the various disciplines, in a clinical laboratory with a director at the doctorate level who is licensed by this state.

[2]An equally plausible theory is that NRS 484.393(1)(a) was designed to insure the production and preservation of reliable blood sample information for use in later civil or criminal proceedings. If this were true, the use of licensed technicians would further that purpose.

from "medical technician," NAC 652.440. If the legislature intended these two similarly defined categories to be different, it is not absurd to assume that the legislature would have made any differences clear. Thus, there is no reason to reject NAC 652.440 as a guide to interpreting NRS 484.393(1)(a).

Additionally, the net effect of the majority opinion is to further complicate already burgeoning drunken driving trials. As a result of the amorphous definition invented today, each time that a blood sample withdrawn by a technician is introduced into evidence, a mini-trial on that person's qualifications must be conducted. The state must prove that the technician was qualified to draw blood; the defense would then have the opportunity to rebut that evidence. Whereas, if the technician was licensed by the state to withdraw blood samples, it would be presumed that the individual possesses the minimum qualifications contained in NAC 652.440. NRS 47.250(9). The need for the state to prove those qualifications would be obviated.

Finally, the most compelling reason for my dissent in this case is the fact that, in spite of well established rules to the contrary, the majority has reversed a factual finding of the district court. In criminal matters, it is clear that only questions of law are to be debated on appeal; questions of fact simply are not before us. NRS 177.025. Because the district court requested additional evidence on the qualifications of the laboratory assistant before finding that she was not qualified to withdraw blood samples pursuant to NRS 484.393(1)(a), I infer that the district court treated this question as a factual one.[3] Hence because there was conflicting evidence as to the laboratory assistant's qualifications, the factual finding that she was not qualified should be upheld on appeal. Cf. Udevco, Inc. v. Wagner, 100 Nev. 185, 678 P.2d 679 (1984) (this court will not disturb factual findings based upon substantial evidence). Thus, for the above stated reasons, I must dissent.

---

[3]I also note that when asked by Judge Berkson to submit additional evidence, the district attorney's office apparently ignored this seemingly reasonable request. Yet, as a result of the majority opinion, the district attorney now gets another bite at the apple, so to speak. The majority decision, in effect, allows the state a second opportunity to prove a fact that it did not prove at the suppression hearing.