[No. 1743.]

# I. A. STROSNIDER, APPELLANT, *v.* C. C. TURNER, RESPONDENT.

1. ELECTIONS—BALLOTS — INDICATION OF CHOICE BY VOTER — DISTINGUISHING MARKS. Under Stats. 1901, p. 112, c. 100, providing that a voter shall prepare his ballot by stamping a cross in the square, and in no other place, after the name of the person for whom he intends to vote for each office, ballots containing three crosses opposite the name of a candidate, two within and one without the square, or two crosses in the square, or two crosses outside the square, or on which none of the crosses are stamped, but which are marked with a lead pencil or by using a corner of a stamp as a pencil, or containing two rectangular marks in squares opposite the names of two candidates, or containing crosses stamped between the name of the candidate and the party designation, or containing an indescribable mark opposite the name of a candidate and a double cross opposite the name of another candidate, must be rejected.

2. SAME. A ballot having the appearance of an attempt to make a second impression of the stamp to make it clearer, or to rectify some defect, is valid, though the second stamping does not exactly cover the first.

3. SAME. A ballot was first marked with a cross with a corner of the stamp. The voter, on discovering his error, made a proper stamp beside the illegal one. *Held*, that the ballot was illegal.

4. SAME—PREPARATION OF BALLOT BY VOTER. A voter, on discovering his mistake in marking his ballot, should, instead of trying to rectify it himself, return the ballot to the election officers, and obtain a new one.

5. SAME. A voter, while preparing his ballot, used a stamp containing very little ink on it, and he did not thereafter apply the stamp to the ink pad before completing the marking of the ballot. The first few crosses stamped were fairly distinct, and all the remaining marks were made by the stamp properly applied. *Held*, that the ballot was valid, though a number of the marks on it had little, if any, resemblance to a cross.

6. SAME. A small portion of the cross marked on a ballot projected over the line dividing the squares opposite the names of two candidates. The main portion of the cross was opposite the name of one of the candidates. *Held*, that the voter intended to cast his vote for the latter.

7. SAME. A ballot is unobjectionable, though some of the crosses stamped on it are imperfect.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Lyon County; *F. P. Langan*, Judge.

Election contest by I. A. Strosnider against C. C. Turner. From a judgment for defendant, plaintiff appeals. **Reversed and remanded for new trial.**

The facts sufficiently appear in the opinion.

*C. E. Mack*, for Appellant:

I.    The ballot marked Plaintiff's Exhibit No. 3 should have·been counted for Strosnider, for the reason that the ballot shows no distinguishing mark, and is marked with a stamp in the square opposite the name of I. A. Strosnider.    There is no reason why this ballot should not have been counted for Strosnider.    The cross is plainly marked in the proper place upon the ballot, and the marking was made with the· official stamp dragged instead of being marked in an upright position.    The statute requires a cross to be used in marking the ballot, and the voter having done so, this ballot should have been counted for Strosnider.

II.    Plaintiff's Exhibit No. 7 should not have been counted for Turner, for the reason that there is a double cross opposite the name of H. Pilkington, and also opposite the name of H. C. Cutting, and, as we understand the law, where there is a double cross opposite any name it should· not be counted.

III.    A ballot disfigured by double or unauthorized markings should not be rejected if it appears that an attempt was made to retrace or otherwise perfect the cross first made. (*Dennis* v. *Caughlin*, 22 Nev. 447; *Whittam* v. *Zohorrick*, 59 N. W. 57.)

IV.    Exhibit No. 10 should have been counted for Strosnider, for the reason that the voter complied with the statute in every particular, excepting in the manner of using the stamp, dragging it, instead of pressing it down square.    The ·ballot shows upon its face clearly that the voter stamped the ballot too hard; it shows an honest intention of the voter, and the ballot is a legal one; it shows that he did not know how to use the stamp and did not know how to make a cross. The statute provides that an "X" may be used instead of a cross, and the voter endeavored to make an "X" the best he knew how, and it was an honest intention of the voter to vote for Strosnider.    The marking of the ballot was uniform and shows no distinguishing marks that the voter had been improperly influenced.

V. Exhibit No. 11 contains three marks opposite the name of Springmeyer, but it does not seem to us that the voter intended this as a distinguishing mark. The mark against the name of Strosnider is clear and well placed, and for that reason we offered the ballot in evidence and asked the lower court to count it.

*Alfred Chartz,* for Respondent:

I. Plaintiff's Exhibit No. 3, like several others, was not stamped. It is written, and whether written by dragging the stamp, or written by dragging a Chinese writing pen, is immaterial. It is not as good as a pencil ballot, decided by this court as fatal. Plaintiff's Exhibit No. 4 was plainly made with a pencil, and not stamped. Plaintiff's Exhibit No. 5 certainly contains no double cross opposite the name of George A. Bartlett, but is only a little blurred, caused by seeming nervousness.

II. Exactly the same remarks apply to Plaintiff's Exhibit No. 5. There was no lifting of the stamp to make a double cross opposite the names of Pilkington and Cutting. Plaintiff's Exhibit No. 8 was properly rejected, because there is a plain lifting of the stamp and a plain double cross opposite the name of Carter, and it is not a slipping or a blurring. Plaintiff's Exhibit No. 9 was properly rejected. There are three separate and distinct crosses, not one of which is connected with the other, though the blurred parts touch each other. The crosses themselves are separate and distinct, and absolutely required the lifting of the stamp. There is no sign of a drag or blur, and no sign of nervousness in execution.

III. This court has thoroughly explained what constitute distinguishing marks, and is well advised. This court has nothing to do with the object of the voter in placing three crosses opposite the name of a candidate, or placing two crosses. It has decided that a double cross is fatal against the validity of the ballot and should not be counted for any candidate, and when it finds a ballot thus diseased, like a leper or a rotten apple, it will be thrown out. Plaintiff's Exhibit No. 10 was properly rejected. It is not stamped. It

is written, and whether written with a Chinese pen or with the end of the stamp, is immaterial. If it is counted, dishonest men will soon grab at the opportunity to sin and make null and nugatory the objects and purposes of the Australian ballot law, so-called. Plaintiff's Exhibit No. 11 contains three separate and distinct crosses within blurred squares, the squares touching each other, but the crosses being separate and distinct. Counsel for respondent herein will also ask permission of the court to use such portion of his original briefs in the case wherein Turner was appellant as may be applicable to this appeal.

IV. The complaint does not state any fact sufficient to constitute any cause of action against respondent. Comp. Laws, 1621, provides for only two causes of contest to the right of any person to hold an office to which he has been declared duly elected: "(1) For malconduct on the part of the board of inspectors, or any member thereof. (2) When the person whose right to the office is contested was not, at the time of the election, eligible to such office." We have nothing to do with the second clause and cause. The complaint charges: "That said Board of County Commissioners of Lyon County in failing to count the votes of Churchill Precinct or canvass the returns received from the said board of officers of Churchill Precinct were guilty of malconduct," etc. This does not charge malconduct on the part of the board of inspectors. It charges malconduct on the part of the Board of County Commissioners, and that is not a ground of contest named in the statute, and the statute enumerating the sole grounds of contest has eliminated all other grounds, under the well-known maxim: *Expressio unius est exclusio alterius.* "A complaint must contain the necessary averments to meet the requirements of the statute." (20 Ency. Pl. & Pr. 598.) "Whenever a statute describes certain specific acts to be done, as prerequisites to the acquiring of jurisdiction, or the enforcement of a legal remedy, such acts must be substantially performed in the manner prescribed." (*Steel* v. *Steel,* 1 Nev. 27.)

V. The second cause of action attempted to be stated is: "That plaintiff is informed and believes, and charges the

fact to be, that in other precincts votes were thrown 'out and not counted that were cast for plaintiff and contestant by the various boards of election of Lyon County that should have been given to plaintiff," etc., but he has no means of ascertaining the number. Comp. Laws, 1622, provides: "When any election, held for an office exercised in and for a county, is contested on account of any malconduct on the part of the board of inspectors of any precinct, or any member thereof, the election shall not be annulled and set aside upon any proof thereon, unless the rejection of the vote of such precinct shall change the result as to such office in the remaining vote of the county." We thus find that the boards of election are charged, and not the boards of inspectors, as provided by statute. We further find that contestant has no means of ascertaining the number, whilst the statute provides that it must be charged that the number is sufficient to change the result. The foregoing are the only causes of action attempted to be stated. No cause of action lies for the first, and the second states no cause of action, and the lower court therefore erred in overruling Turner's demurrer on the ground set forth.

*Mack & Shoup*, for Appellant, in reply:

I.   Under the ruling of the supreme court in this case (29 Nev. 351) that "the rulings upon these ballots are not assigned as error, and hence such rulings are not before the court for consideration," there is nothing whatever before the court for consideration, except the question raised by the appellant's assignment of error. Respondent has nothing whatever to stand upon in this court other than the ballots excepted to, and assigned as error by appellant. This is fully shown by the record on appeal.

By the Court, NORCROSS, J.:

This is the second appeal of this cause. (29 Nev. 347.) Action was brought by appellant to contest the election of respondent to the office of short-term Commissioner of Lyon County. Upon the first trial the lower court found that the plaintiff, Strosnider, had received 276, and defendant,

Turner, 275, lawful ballots. Upon the first appeal we held that the court had rejected certain ballots cast for respondent, which were lawful, and should have been counted. Upon the second trial of this cause the lower court found that the plaintiff had received 277, and the defendant 278, lawful ballots. This appeal again presents for consideration the rulings of the court upon the admission and rejection of certain ballots.

Plaintiff's Exhibit No. 11 was properly rejected, there appearing upon the face of the ballot three crosses stamped opposite the name of George Springmeyer, candidate for attorney-general, two within, and one without, the square.

Plaintiff's Exhibits Nos. 3 and 10 were properly rejected, none of the crosses appearing thereon being stamped. Apparently they were made by using one corner of the stamp as a pencil would be used. Section 20 of the act of the legislature, known as the "Australian Ballot Law," as amended March 21, 1901, provides, among other things, that: "On receiving his ballot the voter shall immediately retire alone to one of the places, booths or compartments. He shall prepare his ballot by stamping a cross or × in the square, and in no other place, after the name of the person for whom he intends to vote for each office. In case of a constitutional amendment or other question submitted to the voters, the cross or × shall be placed after the answer which he desires to give. Such stamping shall be done only with a stamp in black ink, which stamp, ink and ink pad shall be furnished in sufficient number by the county clerk for each election precinct in the county." (Stats. 1901, p. 112, c. 100.)

Plaintiff's Exhibit No. 9 was properly rejected. The ballot contains two rectangular marks or blotches in squares opposite the names of two candidates. Marks of this kind were fully considered upon the former appeal.

Plaintiff's Exhibit No. 8 was properly rejected. The ballot contains two distinct crosses deliberately stamped in the square opposite the name of J. A. Carter, candidate for justice of the peace. Ballots so marked have repeatedly been held illegal by this court.

Error is assigned in the court's refusal to reject ballot · marked "Plaintiff's Exhibit No. 7." Objection was made upon the ground that in the squares opposite the names of two candidates there appear double crosses. We think these marks can hardly be considered double crosses in the sense that they would be regarded as distinguishing marks. They have the appearance of an attempt to make a second impression of the stamp in order to make it clearer, or to rectify some defect. The second stamping did not exactly cover the first. The resulting mark is in character similar to that held to be valid in the case of *State* v. *Sadler*, 25 Nev. 131, 179, and therein referred to as "the so-called double crosses, where it is apparent the voter had attempted to retrace the lines composing the cross."

Ballot marked "Plaintiff's Exhibit No. 6" was objected to on the ground that in the square opposite the name of George A. Bartlett, candidate for member of Congress, there appears a double cross. We think the court erred in overruling this objection. The voter evidently first marked a cross with one corner of the stamp as Plaintiff's Exhibit Nos. 3 and 10, *supra*, were marked. Upon discovering his error he made a proper stamp beside the illegal one. The voter, when he discovered his mistake, instead of trying himself to rectify it, should have returned his ballot to the election officers and obtained a new one, as the law prescribes. To hold a ballot of this kind to be legal would open the way for the secrecy of the ballot to be evaded, the prevention of which is one of the main purposes of the law. Error is assigned in not rejecting ballot marked "Plaintiff's Exhibit No. 5." This ballot is similar to Exhibit No. 7, and the court, we think, did not err in counting it.

Ballot marked "Exhibit No. 4" was not stamped as required by law, but was marked with a lead pencil throughout, and was properly rejected.

Ballot marked "Exhibit No. 2" was erroneously counted over plaintiff's objection. All of the crosses were stamped between the name of the candidate and the party designation, instead of in the square after the name of the person for whom he intended to vote, as required by the statute. Ballots so

marked were held to be legal in *State* v. *Sadler*, *supra*. That case, however, was decided before the amendment of 1901, *supra*, which changed the law in respect to the place prescribed for marking the ballot. The law now requires the cross to be stamped "in the square, and in no other place, after the name of the person for whom he intends to vote for each office." The printed ballots provide a square within which it is the intention of the law the stamp should be placed.

Ballot marked "Exhibit No. 1" is objected to upon the ground that a distinguishing mark appears after the name of O. A. Brooks, candidate for member of assembly. The mark in question is a blurred cross. The cross is plainly visible, and the defect apparently was occasioned by too much ink upon the stamp, or from some other accidental cause.

Appellant assigns error in the counting of three ballots, the legality of which we determined upon the former appeal. Such assignments require no further consideration.

The record in this case contains certain ballots, admitted and counted for appellant over respondent's objections. As we held upon the former appeal, following the case of *Dennis* v. *Caughlin*, 22 Nev. 453, these ballots are not strictly before us. However, as their validity has been argued, we deem it advantageous to express our views upon them in order that the case may reach a final determination at the earliest possible date.

Ballot marked "Plaintiff's Exhibit No. 12" was objected to "upon the ground that there appear indescribable and distinguishing marks from which the ballot could be identified opposite nearly all the names." It is apparent that the person who prepared this ballot used a stamp containing very little ink upon it to begin with, and did not thereafter apply it to the ink pad before completing the marking of the ballot. While one may readily conclude, from the fact hat the first few crosses stamped were fairly distinct, that all the remaining marks were made by the stamp properly applied, it must be admitted that a number of the resultant marks have little, if any, resemblance to a cross, and taken alone would not be recognized as such. However, this ballot should have been rejected for the reason that two crosses

appear to have been deliberately stamped opposite the name of Robert Raftice, candidate for state controller. It would seem quite probable from this ballot that the voter, having first stamped a cross in the square opposite the name of J. C. Knust, socialist party candidate for state controller, placed two opposite that of Raftice, possibly to impress the fact that Raftice was the one for whom he intended to vote.

Ballot marked "Defendant's Exhibit No. 2" was admitted and counted for appellant over respondent's objection, as follows: "That opposite the name of Orvis Ring there is an indescribable mark, and opposite the name of D. W. Melarkey there is a double cross." We think the objection is well taken, and the ballot should have been excluded.

Ballot marked "Defendant's Exhibit No. 1" was admitted, and counted for appellant over the following objection of respondent: "That, taking the ballot as a whole, it is impossible to determine for whom the voter intended to vote for county commissioner." So far as the objection made is concerned, we think it is not well taken. A small portion of the cross projects over the line dividing the squares opposite the names of appellant and respondent. The main portion of the cross, however, is opposite the name of appellant, and we think, "taking the ballot as a whole," it was the voter's intention to cast his vote for appellant.

Ballot marked "Defendant's Exhibit No. 3" was objected to upon the grounds: "That there appears a distinguishing mark after the name of D. P. Randall," etc. Without determining whether the ballot is subject to other objections noted, it is sufficient to say that it contains a cross deliberately stamped outside the square provided for such purpose, and in the blank space immediately below the words "Silver Party," thus rendering the ballot invalid.

Ballot marked "Defendant's Exhibit No. 4" is unobjectionable. The most that can be said against this ballot is that some of the crosses stamped are imperfect. The ballot is clearly admissible under the rule laid down in the case of *State* v. *Sadler, supra.*

If all of the ballots contained in the record were properly before us, we should affirm the judgment. However, as our

action must find its basis upon some error assigned, and as we have determined that the court admitted and counted for respondent, over appellant's objection, three ballots which we think should have been excluded, we are obliged to reverse the judgment and remand the cause for a new trial, which is ordered.