Ex Rel. BLAKE *v.* COUNTY COMMISSIONERS

No. 2684

December 13, 1924.                    231 Pac. 384.

1. Mandamus—Will Not Issue unless Right to Relief Shown.
    Mandamus will never issue unless a clear legal right to relief sought is shown.

2. Evidence—Presumed that Public Officials Did Their Duty.
    It is presumed that, when public officials have acted, they did their duty, and hence court must presume that election officers inspected both tally lists in making their return of votes, and their conclusion as to number of votes must be accepted until mistake is shown by satisfactory proof.

3. Mandamus—Production of One Tally List Held Not to Warrant Issuance of Mandamus to Compel Recount.
    In proceeding in mandamus by defeated candidate to compel recount by board of county commissioners, under general election law, sec. 25, production of one tally list showing that in one square there were five vertical and one horizontal line, which were claimed to have been counted as five, instead of six votes, *held* not sufficient to overcome presumption in favor of return.

See (1, 3) 38 C. J. sec. 56, p. 582, n. 71; sec. 328, p. 728, n. 59; (2) 22 C. J. sec. 69, p. 133, n. 31.

Original proceeding in mandamus by the State, on the relation of L. J. Blake, against E. S. Daugherty and others, as members of the Board of County Commissioners of the county of Ormsby. **Writ denied.**

*Sullivan & Deady, James T. Boyd, James D. Finch,* and *Wm. McKnight,* for Relator:

Tie exists in tallies, though not in footings. Tallies control. Declaration of result must yield to tally list. Totals, if incorrect, must be corrected. People v. Butler, 29 Cal. App. 385; Rice v. Canvassers, 50 Kans. 149; Dalton v. State, 43 Ohio, 652; State v. Hill, 20 Nebr. 119; People v. Ruyl, 91 Ill. 525; Hughes v. Parker, 65 Pac. 265.

Any candidate for assembly or senate may demand recount when tie exists. 1917 Stats. c. 197, sec. 25. Public is also vitally interested. Sweeny v. Adams, 75 Pac. 182. Commissioners shall order recount if tie exists; it is the only proper procedure. Stockton R. R. Co. v. Stockton, 51 Cal. 339. Canvassing board's duty is not fully performed until true count is made. State v. Bailey, 7 Iowa, 390. Canvass means to scrutinize. Webster; Clark v. Tracy, 95 Ida. 410. Board may be compelled to reassemble and make correct canvass. 9 R. C. L. sec. 115; Lehman v. Pettingell, 89 Pac. 48. Duty is ministerial, to add up returns correctly, and declare result. State v. Trimbell, 41 Pac. 183. Canvassers mistakes should not defeat will of people. People v. Worley, 260 Ill. 536; Brown v. Commissioners, 17 Pac. 304.

Canvassers refuse to recount. Mandamus is only plain, speedy and adequate remedy. Rev. Laws, 5696; Humboldt Co. v. Commissioners, 6 Nev. 30; Wright v. Commissioners, 27 Nev. 33; 9 R. C. L. sec. 115; Hebb v. Cayton, 45 W. Va. 578; Bradley v. Canvassers, 154 Mich. 274, 189 Mich. 372. Relator has no other remedy. He cannot contest. 1917 Stats. c. 197, sec. 68.

*Hoyt, Norcross, Cheney & Hoyt,* for Respondents:

Petitioner assumes there is such book as "The Combined Poll and Tally Book." Bare reference to statutes discloses there is no such book or combined book known to law. For convenience poll books and tally lists are combined together, but there are two of these, one retained by clerk after canvass by commissioners and other kept by one of inspectors. Sec. 17, general election law. There was no allegation or proof

that other poll book and tally list corresponded with one offered upon hearing, and it does not follow that other book and list will disclose same result. Section 16 provides board shall count votes cast and when complete clerks shall set down in poll books number of votes in words and figures.

Presumption is that officers performed their duty.

Other poll book and tally list being available, should have been produced. Presumption is that, if offered, it would not support case.

Tally lists are so prepared that only five votes are to be placed in each square. Extra mark in any square is strong evidence of mistake. In fact another square in list offered contains extra mark. If only marks should be counted, petitioner could claim with equal force that he was entitled to two more votes, in which case there would not be tie. It is only in case of tie that recount should be had.

Abstract was made as required by section 25, and is in accordance with returns as provided in section 16.

Proper rule is that canvassers consider entire return and decide, between certificate and tally list, which is correct and make abstract accordingly. They are not bound to accept tally list as conclusive. · People v. Murphy, 129 Pac. 603; Dublin v. Connelley, 129 Pac. 607.

Familiar rule that mandamus will issue only to enforce clear legal right is sufficient to require denial of peremptory writ.

## OPINION

By the Court, COLEMAN, J.:

This is an original proceeding in mandamus. The petition alleges that at the general election on November 4, 1924, L. J. Blake and V. E. Maher were opposing candidates for the assembly from Ormsby County, Blake being the Democratic nominee, and Maher the Republican nominee; that on November 6, 1924, the respondents assembled and canvassed the votes of said county. The petition also alleges:

"That on said date and at all times herein mentioned on 'the combined poll and tally book, including challenge list, of the general election held in Ormsby County, in Carson City number one (1) precinct, on the 4th day of November, 1924,' on page eleven (11) thereof, and in the thirty-third square of said page, appeared six marks or tallies for your petitioner; that said square was canvassed and counted by the respondents as five votes, instead of six votes, as marked in said square, for your petitioner, whereby your petitioner was deprived of one marked vote in the total for said precinct; that the total vote of said precinct was canvassed by the respondents as one hundred seventy for your petitioner and one hundred forty-four for said V. E. Maher; that the total vote of the county was canvassed by said respondents as four hundred and seventy-two for your petitioner and four hundred seventy-three for V. E. Maher; that said respondents should have canvassed the vote of said precinct number one as one hundred seventy-one for your petitioner and four hundred seventy-three for your petitioner's vote in said county, thereby making the count between the two candidates a tie; that the failure of said respondents to declare the vote a tie was due to their mistake in counting five votes in one square, instead of six votes in said square, as were plainly marked in said square; that on the 8th day of November, 1924, your petitioner demanded of said respondents that they declare the vote a tie, and that they order a recount of the ballots of said election; that the respondents knew that six votes were marked in said square above referred to, and nevertheless refused to declare said vote a tie, and refused to order a recount, and do still refuse to do so."

Section 25 of the general election law (Stats. 1917, c. 197, p. 358) provides that in the case of a tie vote for candidates for the assembly any of the persons receiving such tie vote shall have a right to demand of the board of county commissioners a recount of all of the ballots cast for the office for which such person was a candidate.

The only question in the case is whether the petitioner

received in precinct No. 1, of Ormsby County, 171 votes, or only 170 votes, as shown by the totals on the tally list of that precinct which was sent to the clerk of the board of county commissioners by the election officers of the precinct. When the matter came on for hearing the petitioner offered evidence in support of his contention that he was entitled to have counted for him 171 votes, instead of 170. The evidence relied upon to sustain this contention was the tally list, which was returned by the officers of election in precinct No. 1 to the clerk of the board of county commissioners, which was resorted to by said board in making its canvass. In the thirty-third square of the tally list, which contains the record of the votes counted for the petitioner, are five perpendicular marks with a horizontal line drawn through them. The square mentioned is the second from the last one in which votes are recorded.

Section 17 of the election law provides that a return shall be made to the clerk of the board of county commissioners, which shall include, among other things, one of the tally lists of regular ballots and one of the poll books. It also provides that:

"The other poll books and tally lists shall be deposited with one of the inspectors of the election."

No evidence was tendered as to the tally list deposited with the inspector of election.

It is said that the board of county commissioners, as a board of canvassers, should have ignored the footings as returned by the election officers, and been controlled by the tallies made in the tally sheet, allowing six votes in the thirty-third square. Our attention is directed to the following authorities, pro and con: Rice v. Board of Canvassers etc., 50 Kan. 149, 32 P. 134; People v. Butler, 20 Cal. App. 379, 129 P. 600; People v. Murphy, 20 Cal. App. 398, 129 P. 603; Devlin v. Donnelly, 20 Cal. App. 495, 129 P. 607; Hughes v. Parker, 63 Kan. 297, 65 P. 265.

Authority has to be lodged somewhere to add up the returns from the various precincts and to issue a certificate of election to the person shown, by adding the returns from the various precincts, duly certified to as

correct by the election officers, to be entitled thereto; and it may be that the legislature contemplated that the board of canvassers should do no more than add up such certified returns and issue the certificate to the person thus shown to be entitled thereto. It would be remarkable if the legislature contemplated that the certificate of the election officials, based upon all of the evidence possibly available, could be overthrown upon an inspection of only one of the tally lists, when that one might be easily changed, though the other is accessible.

The Supreme Court of Colorado, in construing a statute similar to ours, took the view contrary to that urged upon us by petitioner's counsel, holding that the tally lists were not a part of the certified return saying:

" * * * It certainly was not the purpose of the general assembly to allow mere tally sheets, which are not certified, which contain nothing more than strokes of pen or pencil, with respect to the number of votes cast for any candidate, and which can be readily changed to be taken as evidence sufficient to contradict the certificates, in case of a discrepancy between such certificates and the tally sheets." People Ex Rel. Miller v. Tool, 35 Colo. on page 251, 86 P. 232, 6 L. R. A. (N. S.) 822, 117 Am. St. Rep. 198.

This reasoning is cogent, but, since a determination of the contention is not necessary to a disposition of this matter, we decline to lay down a rule which should control in such a situation.

1. It has repeatedly been held that mandamus will never issue, unless a clear, legal right to the relief sought is shown. State v. Noyes, 25 Nev. 31, 56 P. 946. Can it be said in this case that the petitioner has shown such a right?

Section 2 of the general election law provides that the several boards of county commissioners in the state shall so arrange and divide the voting places in the county that no greater number than 400 voters shall vote in one precinct. The tally lists furnished the election officials are arranged into 80 squares, for the registration

of five votes in each for each candidate, or a total of 400. The tally lists are bound in the poll book, to which are attached directions and illustration showing the manner in which the votes shall be recorded and tallied by the clerks of election, from which it appears that in each square there should be four perpendicular lines and a line drawn diagonally across them to indicate the recordation of five votes for a candidate. There are three inspectors and two clerks of election in each precinct, and it is the duty of each clerk to record on a separate tally sheet the votes as announced by the inspectors, and the votes so recorded by the clerks should agree. In this manner of keeping a tally of the votes counted each clerk is a check upon the other, and their records are the basis for the return made by the said election officials.

2, 3. When public officials have acted, it is a presumption of law that they did their duty. This is a well-established rule. We must presume that the election officers inspected both of the tally lists and from such inspection found that the petitioner received 170 votes. We must accept this conclusion, until it has been made to appear by clear and satisfactory proof that petitioner in fact received 171 votes. Can it be said that such proof has been produced? We think not. We do not think that the marks in the thirty-third square clearly show that the clerk who made that tally list intended to record therein six votes, instead of five. It might easily have happened that the clerk in question thoughtlessly put down the fifth perpendicular line before discovering that it was the fifth vote registered in the square, and, upon learning the fact, simply drew the horizontal line through the square without erasing the fifth line. The sole purpose in drawing the line across the perpendicular lines is to indicate that five votes have been cast, so that the total may be quickly ascertained and called a "tally," and a clerk, discovering that five perpendicular marks have been made, might naturally draw the line across without thinking it necessary to erase one of the perpendicular lines,

especially when it is recorded in ink as in the instant case.

If we were to concede that the tally list in question shows that the petitioner should receive 171 votes, it is evident that the tally list of the other clerk should show that, too. It is not probable that both clerks could have made a similar mistake. If this be true, it is almost certain that in totalling the votes a discrepancy between the results shown by the two tally lists would have been discovered by the election officials, and the tally list in evidence would have been corrected to correspond with the other, and the total on it given at 171, instead of 170, if such officials had deemed the matter of consequence.

Viewing the matter from any standpoint, we are unable to say that the petitioner has shown that clear legal right to the writ sought which would justify its issuance.

It is ordered that the writ be denied, and that the proceedings be dismissed.

SANDERS, J., concurring:

This is a proceeding in mandamus, brought under section 25 of the general election law (Statutes 1917, p. 358), which, among other things, provides as follows:

"On the tenth day (or if that day shall fall on Sunday, then on the Monday following), after the close of any election, or sooner, if all the returns be received, the board of county commissioners shall proceed to open said returns and make abstracts of the votes    *    *    *    And it shall be the duty of the board of county commissioners to cause a certificate of election to be made out by the respective clerks of said board of county commissioners to each of the persons having the highest number of votes for members of the legislature, district, county, and township offices, respectively, and to deliver such certificate to the person entitled to it on his making application to said clerk at his office; provided, that when a tie shall exist between two or more persons for the senate or assembly, or any other county, district or

township officer, any of said persons shall have the right to demand of the board of county commissioners a recount of all the ballots cast for them for the office for which they were candidates.  *  *  * "

The record discloses that the board of county commissioners of Ormsby County, upon making an abstract of the votes cast at the recent general election for candidates for the assembly, ordered its clerk to issue a certificate of election to V. E. Maher as the candidate receiving the highest number of votes for that office. The result of the canvass shows that L. J. Blake was defeated for the office by one vote.  He wants a recount. Subsequent to the board's order to issue the certificate of election to his opponent, he inspected the tally list, made a part of the election returns by section 17 of the statute, and discovered that the tally list from precinct No. 1 revealed a condition which he believed entitled him to demand of the board a recount.  He thereupon made demand upon the board to order a recount, which was refused.  He then applied to and obtained from this court an alternative writ of mandamus, commanding said board to immediately order a recount, or show cause before this court on a day fixed in the writ why it had not done so.  The board appeared and interposed a general demurrer to the petition for the writ.  Preliminary to the hearing, it was in effect stipulated by the attorneys for the respective parties that the relator should make proof of the facts alleged in his petition, and that the entire matter upon argument, be submitted to the court for decision.  The relator put in his proof. The respondent board made no proof whatever.  The demurrer was not pressed, but the respondent took the position that, upon the admitted and undisputed facts, the relator was not entitled to the writ commanding the respondent to order a recount.

I regard the case as one of primary importance, not so much, perhaps, from the effect that its decision may have upon the candidates for the assembly or the temporary prospects of political parties, but from the permanent influence which the decision will have upon

the duties of county boards, with respect to recounts of ballots cast for the particular officer named in the statute.

The first question I will consider is: What is the power of the court in this summary proceeding to compel county boards to order a recount? Counsel for the respective parties have argued the question upon the assumption that, since canvassing boards are ministerial officers, their actions may be controlled by mandamus. In a proper case this, as a general proposition, is true, but here we are dealing, not so much with the powers and duties of county boards with respect to the canvass of the result of an election held, as with their duty to order a recount upon the demand of a defeated candidate when no tie is shown to exist. The relator bases his right to a recount, not upon the ground that a tie exists, but upon the hypothesis that, if the board had made a proper and legal abstract of the official returns, a tie would have existed, and therefore this court should compel the board to declare the result a tie and then order a recount. It is a new question. It is apparent, from the hypothetical statement of the facts, that the issuance of the writ is made dependent upon the contingency that a proper computation of the returns shows that a tie exists. Both upon principle and upon authority, I take the general position in this matter that a court can neither direct canvassing officers what result to ascertain or declare from their investigations, nor can it, by any processes of its own, ascertain for them a result by which they will be bound to make their return. Barnes v. Gottschalk, 3 Mo. App. 225. In this case the court is asked to place itself in the position of the respondent board, and determine for it whether a tie exists, and compel the board to act in accordance with its decision of this question. In other words, the court is asked to consider questions which the canvassing board itself had no power to consider and to compel action by the board, based upon its decision of such questions. This cannot be done. In Re Woods, 5 Misc. Rep. 575, 26 N. Y. S. 169; 15 Cyc. 385.

As before stated, this is a summary proceeding to

compel public officials by mandamus to perform a certain act, to wit, order a recount. It must be conceded that before the board can be required to perform the act it must be one "which the law especially enjoins as a duty resulting from an office, trust, or station." Revised Laws of Nevada, sec. 5695; State of Nevada v. Gracey, 11 Nev. 233. It is well settled that mandamus does not lie to compel a board of canvassers to do an act which, without its command, would not have been lawful for the board to do. The writ, whether alternative or peremptory, must not only show the obligation of the defendant to perform the act, but must also show his omission to perform it. Rosenthal v. State Board of Canvassers, 50 Kan. 129, 32 P. 129, 19 L. R. A. 157.

It is not controverted that the determination of the result of an election by a canvassing board is not a judicial act. It is purely a matter of calculation. State v. Osburn, 24 Nev. 187, 51 P. 837; McCrary on Elections (4th ed.), sec. 261, 15 Cyc. 279, 280. In section 265, McCrary on Elections, it is said the doctrine that canvassing boards and return judges are ministerial officers possessing no discretionary or judicial power is settled in nearly or quite all the states. Applying the above principles to the statute under consideration, I fail to discover anything in the law which enjoins upon county boards a duty or obligation to order a recount, when no tie is shown to exist from the calculation made by the canvassing board of the official returns.

It is urged on the part of the relator that the statute itself assumes it to be the duty of county boards to correct mistakes apparent upon the face of the returns, and, the respondent having refused to correct the mistake complained of, mandamus lies to compel its correction. I concede that, where the mistake is one made by the board itself, as, for example, an error in addition or of some kind too clear for controversy as a matter of simple justice the aggrieved party is entitled to have the mistake corrected, whatever may be the result, or whoever it may affect. But we are dealing in this instance with the question of the power of county boards to order a recount in the face of the express

inhibition of the statute. There is nothing clearer to my mind than that the statute does not authorize county boards to correct mistakes which have occurred on the part of the inspectors of election in a given precinct. It was once the law that, when the county board had canvassed the votes for candidates for the legislature, and it appeared from such canvass that any legislator voted for had received a majority of 10 votes or less, in such case, upon the application of the defeated candidate, setting forth under oath that he had reason to believe and did believe that a mistake or mistakes had occurred on the part of the inspector of election in any election precinct or precincts sufficient to change the result, it then became the duty of the board to immediately proceed to recount the ballots. Section 1513, Revised Laws. But this section of the county government act was expressly repealed by the legislature in 1915 (Statutes 1915, p. 6), and in consequence of the repeal the law as to recounts stands now as it has stood since 1861. I am of opinion that the relator seeks, by this summary proceeding, to have the court revive a repealed law by attributing to the respondent board a mistake, if it be a mistake of the election officials, and thus circumvent the plain meaning and purpose of the law as to recounts.

It is strongly urged on the part of the relator that, in a case where a discrepancy exists between tally markings and the statement of the total votes for a candidate made by the election officials, the former control and require a declaration to be made in conformity therewith. I do not concede that any such discrepancy is shown in this case. According to the returns, the relator received 170 votes in precinct No. 1, when the tally markings opposite his name are counted by squares, five marks each to the square. But, if each mark opposite the name of the relator is to be counted as a vote, he received 171 votes in that precinct. Assuming, for the sake of the argument, and the argument only, that it was within the discretion of the board, from the condition revealed by the tally list, to accept the count by squares as the correct number of votes cast

for the relator, the board cannot be compelled by mandamus to alter its determination. It is certain that the board could not determine judicially whether the mark was in fact a vote for the relator.

It is claimed that this court should take judicial notice that the extra mark in square 33 (which gave rise to this controversy) was recorded as a vote cast for the relator. My answer is, as a matter of principle, judicial notice of a fact that is reasonably open to dispute should not be taken. Only such facts as are reasonably not open to dispute should be judicially noticed.

It is suggested that the conclusion reached leaves the relator without a remedy. If this be true it is the fault of the legislature; not the fault of the respondent board or this court. But I am not prepared to concede that the relator is without a remedy. This question, however, is not involved, and I intimate no opinion upon it.

As I conclude that the statute imposes no duty upon the board to order a recount in the present case, it is unnecessary to enter upon a discussion of the evidence, but, if I were pressed to do so, I should say that no unfavorable inference is to be drawn from the relator's failure to put in evidence the corresponding or duplicate tally list which is not made a part of the election returns by the statute. The board itself had no right to consider such list (15 Cyc. 382), and, since this court can go no further than the board, it is probable that, had the duplicate list been offered, it would be immaterial. But I am clearly of opinion that an unfavorable inference is to be drawn from the failure of the parties to place before the court the poll book or poll list of the number of votes cast in precinct No. 1, which is a part of the official returns. It is possible that the poll book would have settled this controversy one way or the other, and why it was not placed before the court is a matter of conjecture.

In any view of the case, this court cannot by mandamus help the relator out of the dilemma in which the law places him.

The writ was improvidently issued, and the proceeding should be dismissed.