STATE OF NEVADA, ON THE RELATION OF N. E. CONKLIN, PETITIONER, v. D. M. BUCKINGHAM, COUNTY CLERK OF THE COUNTY OF MINERAL, NEVADA, AND EX OFFICIO REGISTRAR OF SAID COUNTY, RESPONDENT.

No. 3250

October 25, 1938.                    83 P.(2d) 462.

*N. E. Conklin,* in pro per.:

# OPINION

By the Court, TABER, J.:

On September 10 of the present year, petitioner applied to this court for a writ of mandamus commanding the county clerk of Mineral County, as ex officio registrar, to purge the register of voters of the names of forty-six allegedly illegal voters and registrants, most of whom, according to the allegations of the petition, were men of the United States marine corps and their wives. The petition was based upon the grounds "That said persons are not bona fide residents of the State of Nevada and of the County of Mineral, neither are they, or any of them eligible to be registered as qualified electors or as electors or as voters of the County of Mineral, State of Nevada, for the reason that at the time of the enlistment of said Marines the County of Mineral, State of Nevada, was not their, or his place of residence."

None of the forty-six persons listed in the petition was made a party to this proceeding, nor was any process or notice served upon any of them. They were not, nor was any of them, represented by counsel; but, by consent of the petitioner and with the permission of the court, Captain George W. Walker addressed the court in their behalf. It was stipulated that a general demurrer be considered as having been filed, and that the allegation of nonresidence be considered as having been denied. A written "Memorandum of Law," evidently prepared by an attorney, but not signed, was filed in behalf of said forty-six persons. It was agreed

that as soon as the court reached a decision, its order or judgment might be made and entered—the court's opinion to be filed later. On September 30 the proceeding was dismissed.

Section 9242 Nev. Comp. Laws 1929, provides in part that the writ of mandamus may be issued "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust, or station * * *." There is no statutory provision requiring or authorizing any registry agent, upon demand of an elector, to remove from the list of registered voters the name of any person upon the ground that he or she is not a bona fide resident.

Section 25 of "An Act regulating the registration of electors for general, special, and primary elections," Statutes of Nevada 1917, chap. 231, p. 425, at p. 433 (Comp. Laws, sec. 2384), expressly authorizes district court proceedings to compel the county clerk to make and enter the name of any qualified elector in the precinct register; but neither this nor any other section of our statutes provides for such proceedings to compel the clerk or any registry agent to purge the registry list by striking therefrom the names of persons who do not .possess the necessary residential qualifications for voting.

Section 21 of said 1917 registration act, as amended, Statutes of Nevada 1927, chap. 171, p. 290 (sec. 2380 Nev. Comp. Laws 1929), provides that the county clerk must cancel any registry card in the following cases: "The county clerk must cancel any registry card in the following cases:

"1. When he has a personal knowledge of the death of the person registered or when a duly authenticated certificate of the death of any elector is filed in his office.

"2. When the insanity of the elector is legally established.

"3. Upon the production of a certified copy of the judgment of conviction of any elector of felony.

"4. Upon the production of a certified copy of the judgment of any court directing the cancellation to be made.

"5. Upon the request of any elector who desires to change his politics, or to affiliate with any political party, provided said change is made forty-five days before any primary election. If any card is cancelled by reason of this subdivision 5 the elector may immediately reregister.

"6. Upon proof, by affidavit, of one or more electors filed with the county clerk of the removal from the county of any person as provided by section 5 of this act.

"7. At the request of the party registered. If any card is so cancelled the party shall not be reregistered within forty-five days of such cancellation."

The grounds upon which the petition in the instant proceedings is based are not included in any of the aforesaid six grounds for cancellation of registry cards.

In sec. 6 of "An Act to provide for the registration of the names of electors, and to prevent fraud at elections," Statutes of Nevada 1869, chap. 90, p. 140, at p. 142, it was expressly provided, inter alia, that "any elector may also apply to the District Court of his district, or the Judge thereof, for a writ of mandamus to compel the Registry Agent to erase from the registered list of electors the name of any person therein registered, whom the applicant may know, and be able to prove, is not a qualified elector * * *." But no such provision was incorporated in the new registration act of 1917.

Mandamus will not issue unless a clear legal right to the relief sought is shown. Ordinarily, mandamus against an officer is an appropriate remedy only where he refuses to perform a definite present duty imposed upon him by law. Furthermore, as a general rule, the writ will not lie to undo what ought not to have been done. Nor will it lie to compel an officer to

do an act which, without its command, it would not be lawful for him to do. State ex rel. Blake v. County Commissioners, 48 Nev. 299, 231 P. 384; Ferris on Extraordinary Legal Remedies, secs. 192, 193, 194; Moses on Mandamus, p. 58; State ex rel. Lyle v. Willett, 117 Tenn. 334, 97 S. W. 299; Annotation, 96 A. L. R. at page 1050.

In some jurisdictions there are special statutory provisions authorizing trial courts or judges to purge registry lists, but at the present time no such provisions appear in the Nevada statutes, and a writ of mandamus cannot supply them.

It would be a reproach to the law if no method were provided for preventing voting by persons lacking legal qualifications. Our statutes, however, do provide a remedy. Sec. 2382 Nev. Comp. Laws 1929, being sec. 23 of "An Act regulating the registration of electors for general, special, and primary elections," Statutes of Nevada 1917, chap. 231, p. 425, at pp. 432, 433, reads as follows: "At any time not later than the tenth day prior to any election, a challenge may be filed with the county clerk, signed by a qualified elector in writing, and duly verified by the affidavit of the elector, that the elector designated therein is not entitled to vote. Such affidavit shall state the grounds of challenge, objection, and disqualification. The county clerk shall file the affidavit of challenge in his office as a record thereof. The county clerk must deliver a true and correct copy of any and all of such affidavits so filed to the inspectors of election, at the same time, and together with the copy of the precinct registers and check-lists, and other papers required by this act to be delivered, and he must write distinctly opposite to the name of any person whose qualification as an elector has been challenged, the words 'To be challenged.' It shall be the duty of the inspectors of election, if, on the election day, such person who has been objected to and challenged applies

to vote, to test, under oath, his qualifications. Notwithstanding the elector is registered, his right to vote may be challenged on the day of election by any qualified registered elector orally stating to the inspectors of election the grounds of such objection or challenge. It shall be the duty of the inspectors of election when it appears that any elector offers to vote and is either challenged by a duly qualified registered elector on election day, or by an affidavit of objection filed with the county clerk to test the qualifications of the elector and ask any questions that judges may deem proper. They shall compare the answers of the elector to such questions, which answers shall be given under oath, with the entries in the precinct register books, and if it be found that said elector is disqualified, or that the answers given by such elector, to the questions propounded by the inspectors do not correspond to the entry in the precinct registers, or that said elector is disqualified from any cause under the law, or if he refuses to take an oath as to his qualifications, he shall not be permitted to vote. The inspectors of election, in their discretion, may require such elector to produce before them one or more qualified electors of the county, as they may deem necessary, and have them examined under oath, as to the qualifications of the elector."

Besides the right of challenge, any elector is also given the right to contest the right of any person declared elected to an office upon the ground, among others, that illegal votes were received. General election law, Statutes of Nevada 1917, chap. 197, sec. 71, p. 380 (sec. 2509 Nev. Comp. Laws 1929).

■ It was because petitioner did not pursue the proper remedy that his petition was dismissed. We think it proper to observe, further, that when trial courts or judges are given the power to purge registry lists, the persons whose qualifications to vote are questioned are uniformly given their day in court. In the

instant proceeding, as has already been pointed out herein, none of the forty- six persons who were alleged to be lacking in residential qualifications was made a party, nor was any notice or process served upon any of them.