IN THE MATTER OF THE CONTESTED ELECTION OF ROB-ERT T. (BOB) MOORE FOR THE OFFICE OF COM-MISSIONER, THIRD CLASS, OF THE CITY OF LAS ˉVEGAS, NEVADA.

WILLIAM PECCOLE, CONTESTANT, v. ROBERT T. (BOB) MOORE, CONTESTEE.

No. 3535

October 1, 1948.                    197 P.2d 858.

*Lewis, Hawkins & Cannon* and *Jones, Wiener* and *Jones,* all of Las Vegas, for Contestant-Appellant.

*George E. Marshall,* of Las Vegas, for Contestee-Respondent.

## OPINION

By the Court, BADT, J.:

In the city election of May 6, 1947, for the city of Las Vegas, Clark County, Nevada, there were twelve candidates for commissioner, third class, 4-year term, for which office one was to be elected. Appellant and

respondent were two of such twelve contestants. According to the election returns, appellant Peccole received 904 votes and respondent Moore 941—a plurality of 37 votes. Appellant (sometimes herein referred to as plaintiff and sometimes as contestant) commenced a statutory contest proceeding by filing his "Statement of Contest" under the provisions of N.C.L. sec. 2506 et seq. The court below sustained respective demurrers to the original statement of contest, the amended statement of contest and the second amended statement of contest, and the matter went to trial on the third amended statement of contest, the contestee's answer and the contestant's reply.

Contestant alleged that the election officials were guilty of malconduct in that they did willfully, intentionally, wrongfully and unlawfully reject certain ballots which should have been counted for contestant and counted certain ballots for contestee despite the fact that they were illegal for sundry reasons alleged in the allegations. These were lack of watermark, excessive number of names voted for, impossibility to determine the voter's choice, names, words, erasures or marks upon the ballots, marks made by pen and ink, made by pencil, or by using the stamp as a brush or a marker, crosses stamped outside of the square provided, the use of more than one cross in certain squares, ballots mutilated or disfigured by erasures, etc., all of which markings, it was alleged, could be used as identifying marks. It was further alleged that had the votes been properly accepted, rejected and counted, contestant would have received the highest number of votes of any candidate for the office at said election.

Specific proof of misconduct was offered as to precinct 9 and as to this precinct, as will hereafter appear, the trial court permitted the ballots to be opened and counted. The court refused, however, to permit the ballots in the remaining precincts to be opened and counted because there had been no proof of misconduct

of the officials in such precincts. (Throughout this opinion we use the term malconduct or misconduct of officials as including and applying to the erroneous counting or rejecting of ballots, under the holdings of many cases. No willful wrong on the part of any of the election officials is anywhere suggested in the case.) Such refusal to open and count the ballots is the main error assigned in this appeal. The court's ruling was made largely in acceptance of the theory advanced by contestee that an enactment by our legislature in 1931 to the effect that it is presumed that official duty has been regularly performed amended our statutory election contest proceedings and was determinative of the accuracy of the count unless contestant proved misconduct aliunde.

The point urged upon the lower court, first, upon the respective demurrers to the original complaint, the first amended complaint and the second amended complaint and, secondly, upon the question of the admissibility of the ballots in evidence and thirdly, upon the plaintiff's motion for a new trial, and the point squarely presented to this court, is whether the 1931 amendment in effect made inapplicable the earlier holdings of this court. The act is chapter 50 of the Statutes of 1931 found at page 59 and entitled "An Act to amend an act entitled 'An act to regulate proceedings in civil cases in this state and to repeal all other acts in relation thereto,' approved March 17, 1911, by adding thereto seven new sections to be numbered and designated sections 558a to 558g, inclusive, defining indirect evidence, inferences and presumptions, and repealing all acts and parts of acts in conflict herewith." The act defines and classifies indirect evidence, inferences, conclusive presumptions and presumptions that may be controverted. Section 558g, N.C.L.1931–1941 Supp., sec. 9047.07, reads: "All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following

are of that kind: * * * 15. That official duty has been regularly performed * * *"

In offering the ballots in evidence (after establishing that the ballots and other election records were in the same condition as when delivered by the election officials to the city clerk and by the city clerk to the county clerk) and in answering defendant's objection to such offer, plaintiff's counsel insisted "that under the pleadings in this case, the best evidence of the correctness of the count of the inspectors, and the commissioners, are the ballots themselves, by all the authorities in this state." Counsel for the defendant objected to the admission of the ballots on the ground "that the law of the state is that there is a presumption in favor of the fact that the official duty has been regularly performed * * * There is no testimony the contestee was deprived of any ballots whatever; there is no testimony that the contestant was given any ballot, whatever * * * and we object to the offer to accept these ballots on the ground there has been no showing made that would overcome the law of the state that official duty has been regularly performed." Counsel for the plaintiff insisted again that this court had held "that the best evidence of what these things are is the ballots themselves." The learned judge remarked that he had overruled the demurrer to the third amended complaint because its general allegations were sufficient as to the casting of "illegal votes" (that is ballots by illegal voters, in which case the statutory notice was required to be served specifying the names of the illegal voters, etc.), but that he considered the third amended complaint insufficient as containing only general conclusions as to malconduct on the part of the election officials. The court repeated that it had considered the third amended complaint sufficient as against a general demurrer because it contained specific allegations of malconduct as to precinct 9, wherefore it was unnecessary then to determine "whether malconduct on the part of the election

officials of the precincts other than precinct 9 [had] been set forth specifically so as to warrant the overruling of the general demurrer on this ground also." The court then ruled that except as to precinct 9 the ballots could not be opened "because there is not specific enough allegation to show malconduct in the election boards of the other precincts." It seems clear that the specification of error, because the ballots were excluded without prior proof of specific acts of malconduct, is to all intents and purposes the same specification as to the holding that the complaint was insufficient in failing to allege specific acts of malconduct. The alleged erroneous counting of ballots for the defendant and the alleged erroneous refusal to count ballots for the plaintiff was, as we have seen, deemed by the court to be a mere conclusion. The court continued, in ruling on the admissibility of the ballots: * * * the only thing the court does reject in the way of the offer of proof at this time is the ballots themselves and the other records pertaining to the election now in the hands of the city clerk. * * * If you have other evidence of malfeasance or misconduct or something and would like to offer it, I will make my ruling." Plaintiff then again reoffered the counted and rejected ballots for the various candidates and announced that he had no other evidence.

Before this court, respondent says frankly, with reference to his contention that it is necessary to allege and prove specific acts of malconduct (actual mistakes in counting the ballots) before the ballots themselves may be received in evidence, "We do not assert that this has been the rule in the State of Nevada, and we contend most urgently that the law of these cases has been changed." And again the respondent asserts: "We do contend seriously that the law has changed and therefore, the reported decisions of the Supreme Court of our state to the contrary, * * * [we] should now adopt the rules that have been promulgated in other states

where the statute designates that official duty has been regularly performed."

■ Respondent could not do otherwise than concede frankly that the rule has been established in this state, contrary to the rule announced in some other jurisdictions, that when the election count is challenged by general allegations of misconduct (which we have held to include the erroneous counting of votes) the ballots themselves constitute the best evidence, the primary evidence, the only evidence of the correctness of the count, and that proof of misconduct or error aliunde, as secondary evidence, is not a necessary foundation or basis for the admission of the ballots. This was definitely settled in Schneider v. Bray, 22 Nev. 272, 39 P. 326, wherein it appears that the precise point was urged and definitely passed upon. There, as in the present case, the district court had ruled to the effect that it was proper for the plaintiff to prove that "ballots were called and counted for Bray which should have been called and counted for Schneider," but that he must do this before he would be permitted to introduce the ballots which the plaintiff had offered for the purpose of proving these alleged facts. It appears from the briefs printed in the official volume of the Nevada Reports that the appellant urged that two points were involved: "1. Are the ballots primary or secondary evidence? 2. What is the proper foundation to lay to make the ballots primary evidence?" The respondent apparently agreed with the issue presented. He said: "Appellant urges that, from this allegation (malconduct in counting votes for Bray which were in reality cast for Schneider, in sufficient numbers to change the result of the election) and upon his showing that the ballots had not been tampered with, he has a right to have the ballots opened and counted, while respondent contends that some showing of fraud must be made before the court will order the ballots to be produced and counted." The court held

through Mr. Justice BONNIFIELD, citing numerous cases, that although the returns of the inspectors of election are prima facie true, "when the returns are impeached, the ballots are the primary and controlling evidence of the true result." Thus the issue has been definitely determined and we are not called upon to reconsider the arguments presented or the reasons and authorities there relied upon by this court. Schneider v. Bray was cited and approved in Averyt v. Williams, 8 Ariz. 355, 76 P. 463 and in Looney v. County Election Board of Seminole County, 146 Okl. 207, 293 P. 1056, and the rule applied has been enunciated by many other authorities. See 18 Am.Jur., "Elections," p. 377, sec. 306; 29 C.J.S., Elections, sec. 249, page 362; Vincent v. Sims, 207 Ind. 47, 191 N.E. 150; Wolff v. Clark, 212 Ky. 435, 279 S.W. 658; Bass v. Leavitt, 11 Cal.App. 582, 105 P. 771, 774. In the last-mentioned case we find the significant remark: "We do not think the case is one where it would have been possible for either contestant to discover in advance of the trial the ballots which bore distinguishing marks * * *."

In the later case of Warren v. Wilson, 46 Nev. 272, 285, 210 P. 204, 997, 212 P. 497, decided in 1923, Mr. Justice COLEMAN, speaking for this court, said: "The entire evidence consists of ballots cast at the primary election, which are before us; hence there can be no dispute as to the evidence. The only question for the consideration of the trial court was whether ballots having certain marks should be counted for the appellant or the respondent."

■ We think that the complete answer to respondent's contention is that the statutory presumption above quoted as enacted in 1931 has always been in effect in this state under the common law. In Schneider v. Bray, supra, decided in 1895, it was conceded by the court that "The returns of the inspectors of election are prima facie true," which is but another way of stating the statutory presumption as applied to elections. In State

ex rel. Blake v. County Commissioners, 48 Nev. 299, 231 P. 384, 385, decided in 1924, involving the contest of opposing candidates for assembly from Ormsby County, it was stated by this court: "When public officials have acted, it is a presumption of law that they did their duty. This is a well established rule." This being so, it cannot be said that the 1931 statute so amended our election laws or civil practice and proceedings governing election contests as to render nugatory the effect of the holding of this court in Schneider v. Bray.[1] In addition to the cases elsewhere cited herein, other election contest appeals reaching this court include Stinson v. Sweeney, 17 Nev. 309, 30 P. 997; Lynip v. Buckner, 22 Nev. 426, 41 P. 762, 30 L.R.A. 354; State ex rel. McMillan v. Sadler, 25 Nev. 131, 58 P. 284, 59 P. 546, 63 P. 128, 83 Am.St.Rep. 573; and James v. Stern, 44 Nev. 430, 195 P. 1104. Nothing in any of these cases detracts from the conclusion we have reached. In all of such cases the ballots were examined and counted and in each such case the judgment of the trial court and the final action of this court were governed by a determination as to what ballots were valid and should be counted and what ballots should be rejected. While it is true that it does not appear in these cases that a consideration of the ballots was objected to in the absence of prior proof of error or mistake or that the officials had been guilty

[1]The 1931 act, N.C.L.Supp.1931–1941, sec. 9047.01 et seq., defines indirect evidence, defines inferences, defines presumptions, defines conclusive presumptions and lists seven classifications thereof, defines disputable presumptions and lists forty "of that kind." A casual glance at the forty listed disputable presumptions indicates that many of them, indeed most of them, are, like subdivision 15 (herein invoked by respondent) but statements of the common law or presumptions well recognized in our jurisprudence. Citation of but the first six of these will be illustrative: "1. That a person is innocent of a crime or wrong; 2. That an unlawful act was done with an unlawful intent; 3. That a person intends the ordinary consequences of his voluntary act; 4. That a person takes ordinary care of his own concerns; 5. That evidence willfully suppressed would be adverse if produced; 6. That higher evidence would be adverse from inferior being produced," etc.

of malconduct, it is clear from the nature of the opinions from this court that for the most part the alleged error in counting or rejecting ballots could hardly have been the subject of any specific allegation of such malconduct. While not directly in point on the question here raised, these cases lend support to our conclusion.

■ The learned district court, in view of the presumption created by the 1931 statute, held, and respondent insists, that we should be governed by what is claimed to be the better rule as expounded in the cases of Otjen v. Kerr, 191 Okl. 628, 136 P.2d 411; and In re Cryer, 77 Cal. App. 605, 247 P. 252. These cases decry what amounts virtually to a right to a recount upon a general allegation of malconduct. Sweeping allegations of misconduct of election officials in 1,026 precincts in the California case and like allegations affecting 3,690 precincts in the Oklahoma case were in those cases held to be nothing more than general conclusions. These cases are well reasoned and we have no criticism to make of them. Their logic indeed is particularly apt to the situation in this state. Under sec. 1513, Revised Laws of Nevada of 1912, it was provided that if the result of the canvass showed a majority of ten votes or less for a candidate, the defeated candidate could obtain a recount upon a simple application stating that he believed that mistakes had occurred. This section was repealed, however, in 1915, Stats. 1915, page 6, whereby the legislature narrowed rather than broadened the right to a recount and provided for such recount only in case of a tie vote. Although it is asserted that permitting the ballots to be recounted in an election contest based on the general allegations of misconduct is contrary to the intention thus evidenced by the legislature, we are nonetheless bound by the settled law of this state, which has been known to many legislatures since that law has been established. Nor does it appear from the number of election contests initiated in this state that such a situation has been abused. It may be that defeated candidates who might have been disposed to

request a simple recount under the former statute are deterred from the more formal proceeding of an election contest in the district court or in the supreme court as the case may be. However that may be, if a change in the situation should seem desirable, it is one for the legislature to make and not the court. We hold that the rule laid down in Schneider v. Bray, supra, was not changed by the 1931 statute, and that it was error for the district court to reject the offer of the ballots in evidence.

As noted, a showing having been made of erroneous action of the election officials in the counting of certain ballots in precinct 9, the court permitted an examination of the 183 ballots of that precinct, and the result of that hearing was to change the counting board's figures—96 to 15, a plurality of 81 in favor of contestee—to the court's figures—85 to 18, a plurality of 67 in favor of contestee in precinct 9. The aggregate figures for the 32 precincts—941 to 904 in favor of contestee according to the election board—became changed to 930 to 907 in favor of contestee as a result of the court's rulings on contested ballots. The contestee's aggregate plurality in all precincts was thus reduced from 37 to 23. The contestant had gained 14 votes as the result of the hearing as to precinct 9. 32 more ballots in precinct 9 had been challenged by contestant, but the court overruled contestant's objections to counting these ballots for the contestee. Error is assigned as to each such ruling, and these ballots are now before us as exhibits 3 to 34, inclusive. Appellant contends that all of these should be rejected because there are distinguishing marks on each one. If 24 or more of them are rejected the plurality would be in favor of contestant and he would, absent any change in the other precincts, be entitled to a certificate of election. In the ballot identified as plaintiff's exhibit 8, the cross is not in the square opposite the candidate's name, but appears immediately following the name, between the name and the

square.  It should have been rejected.  State ex rel. Springmeyer v. Baker and Josephs, 35 Nev. 300, 316, 129 P. 452, 456.  As to the remaining 31 ballots, although the specified objections are couched in varying language, an examination shows that the stamped cross is in many places blurred, apparently due to overinking from the ink pad.  In other cases one line of the cross touches the boundary line of the square or slightly crosses the line.  In each case the district court properly overruled the objection of the contestant and refused to reject the ballot.  It could not have done otherwise.  The objections were hypertechnical.  No purpose would be served by discussing these ballots in detail.  This court said in State ex rel. Springmeyer v. Baker and Josephs, supra: "Nearly all the questions involved regarding the validity of the ballots have been determined in the cases of Dennis v. Caughlin, 22 Nev. [447] 452, 41 P. 768, 29 L.R.A. 731, 58 Am.St.Rep. 761; Sweeney v. Hjul, 23 Nev. 409, 48 P. 1036, 49 P. 169; State ex rel. McMillan v. Sadler, 25 Nev. [131] 163, 58 P. 284, 59 P. 546, 63 P. 128, 83 Am.St.Rep. 573; Lemaire v. Walsh, 27 Nev. 258, 74 P. 801; Strosnider v. Turner, 29 Nev. 347, 90 P. 581; and Strosnider v. Turner, 30 Nev. 155, 93 P. 502, 133 Am. St.Rep. 710."

The count of the ballots in precinct 9 will accordingly be altered by not counting exhibit No. 8 for the contestee.  As to the rejection of the other 31 ballots in precinct 9, there was no error and such orders are approved.

By reason of the erroneous refusal of the court to open and inspect and pass upon the legality and count of the ballots in the remaining 31 precincts, the judgment and order denying plaintiff's motion for new trial are hereby reversed, and the case is remanded to the district court for a new trial.

Each party will pay his own costs in this court.

EATHER, C. J., and HORSEY, J., concur.